**UNITED STATES ex rel. Henry H. STAPLES, Petitioner,**

v.

**Frank J. PATE, Warden, Respondent.**

No. 62 C 980.

United States District Court
N. D. Illinois, E. D.

Oct. 28, 1963.

Thomas P. Sullivan, Chicago, Ill., for petitioner.

William G. Clark, Atty. Gen. of State of Illinois, Daniel N. Kadjan, Asst. Atty. Gen., Lester Shapiro, Sp. Asst. Atty. Gen., Chicago, Ill., for respondent.

WILL, District Judge.

The Court has considered petitioner Henry Staples' petition in forma pauperis for a writ of habeas corpus and the first supplement thereto; the memorandum on his behalf filed May 10, 1963; the brief filed July 2, 1963; a supplemental letter filed July 9, 1963; respondent's answer to the petition and supplement, motion to dismiss, and memorandum filed June 28, 1963; the transcript of proceedings in the post-conviction hearing held in the Circuit Court of St. Clair County on February 10, 1956, in the matter of Staples v. Illinois; and the Illinois Supreme Court's unreported affirmance thereof dated May 23, 1958 (No. 1978), cert. denied, 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed. 2d 84 (1958). In addition, the Court has heard and considered testimony presented at a hearing in this matter held on June 21, 1963, and has examined the exhibits there tendered. On the basis of this consideration and examination, the Court hereby makes the following findings of fact and conclusions of law:

### Findings of Fact

1. During the evening of October 11, 1942, at East St. Louis, Illinois, petitioner's wife was struck repeatedly with an ax; she died soon thereafter.

2. Petitioner was arrested early the following morning but denied any participation in the homicide.

3. While in custody in a police squad car, petitioner verbally agreed to a search of his home by police officers and accompanied the officers to his home where, with an officer standing on each side of him, he unlocked the door and they entered. The search resulted in the discovery of an ax, a shirt and a pair of pants, all bloodstained, and all of which were seized by the police.

4. Initially, petitioner maintained that the blood was that of a hog he had recently butchered. However, after further questioning, unaccompanied by physical coercion or threats, he admitted having killed his wife, and he signed a written confession thereof.

5. Petitioner was not taken before a magistrate until sometime on the following day, October 13, 1942.

6. On December 18, 1942, petitioner was indicted for murder by the Grand Jury for St. Clair County, Illinois. A few days later, he was arraigned in the Circuit Court of St. Clair County where he pleaded not guilty.

7. On January 13, 1943, while represented by privately employed counsel, Mr. Noah W. Parden, petitioner withdrew his plea of not guilty and entered a plea of guilty to murder.

8. The presiding judge, Morris B. Joyce, admonished petitioner as to the consequences of this plea, but he persisted therein. Judge Joyce received the plea, held a short hearing on the facts— at which petitioner, among others, testified—and sentenced him to 99 years imprisonment which term he is presently serving at the Illinois State Penitentiary, Joliet.

9. Petitioner has made repeated efforts to obtain a copy of the transcript of the above-described proceedings before Judge Joyce, the first attempt being by a letter dated November 4, 1947. He has never been successful and no such transcript presently exists.

10. On February 10, 1956, petitioner's case was the subject of a post-conviction hearing held in the Circuit Court of St. Clair County before Judge Quinten Spivey.

11. Petitioner was represented therein by court-appointed counsel, Mr. William R. Hotto, and petitioner alone testified in his own behalf.

12. In his testimony there, petitioner contended that (1) he had been physically coerced into signing the confession (five police officers allegedly having beaten him with blackjacks on each of three successive nights after his arrest until he signed); (2) he had pleaded not guilty, but the court entered his plea as guilty; (3) he had demanded a jury trial, but Judge Joyce denied him the right to have one; (4) he had requested

a trial delay until one Henry Anderson, allegedly an eye-witness to the homicide, could be located and brought in to testify, but the request was denied; and (5) he had sought leave to substitute in place of Mr. Parden an attorney who would assist him, but this was also denied.

13. At the same hearing, several witnesses testified for the State. The substance of their testimony was that petitioner had signed the confession voluntarily shortly after having been confronted with the bloodstained articles found in his home, that at no time had he been coerced or threatened, and that at the January, 1943, hearing, petitioner had voluntarily entered a plea of guilty and had at no time requested a jury trial.

14. At the conclusion of the hearing, Judge Spivey ruled from the bench that petitioner had been represented by competent counsel at the 1943 hearing and had received regular and orderly courtroom treatment, and that his plea had been guilty to the crime charged.

15. This decision was affirmed on May 23, 1958, in an unreported order of the Supreme Court of Illinois (No. 1978), cert. denied, 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed.2d 84 (1958).

16. Staples' petition was filed in this Court in May, 1962, and thereafter the Court appointed Mr. Thomas P. Sullivan of the Illinois Bar to represent petitioner in the proceedings here.

17. In his petition to this Court (and first supplement thereto), petitioner alleged the following grounds for the granting of his petition: (1) he was denied due process of law as guaranteed by the Fourteenth Amendment because he was unable to obtain a stenographic transcript of his plea and sentencing for use in perfecting an appeal; (2) he was denied the right to a jury trial and to a fair trial; (3) he was denied the right to call witnesses in his own behalf and to obtain a trial delay until they could be present; (4) he had never made a voluntary and intentional plea of guilty; (5) he was denied leave to replace his attorney with counsel who would be of

assistance; and (6) his confession was obtained during a period of unlawful detention and by means of psychological and physical coercion, promises and threats.

18. In a memorandum filed in May, 1963, and later in a brief filed in July, petitioner urged, in addition, that the confession was induced upon confrontation with evidence uncovered by the police as the result of an unlawful search and seizure. He does not allege that this ground has ever been presented to any state court authorized to grant the relief here requested. Nor does he allege that state corrective process is currently unavailable to him. The memorandum and brief also suggest that the arresting officers delayed unreasonably in bringing him before a magistrate, in violation of Illinois law (Ill.Rev.Stat. 1941, ch. 38, § 660), a contention which was raised by petitioner before the Illinois Supreme Court in 1958 and decided adversely to him.

19. Petitioner was present at the hearing held on June 21, 1963, in this Court, but he did not testify. He offered no evidence in support of his contention that he had not pleaded guilty, that he had demanded and been denied a jury trial, that he had sought to have witnesses called in his own behalf, or that his attorney had not assisted him.

20. At the hearing here, two persons were called by petitioner to testify as adverse witnesses. In substance, their testimony was as follows: Mr. Robert Gustin, in 1942 and 1943 the chief assistant State's Attorney for St. Clair County and the principal prosecutor of petitioner, stated that he heard Judge Joyce admonish Staples and then heard him plead guilty; and Mr. Edgar Sherrod, in 1942 and 1943 a member of the East St. Louis Police Department described the events which occurred while petitioner was in police custody from the time of his apprehension until after his confession. These events included his initial denial of participation in the homicide, his consent to a search of his home, the finding and seizing of incriminating evidence,

further questioning of petitioner, his continued denial of participation, his admission of the murder and signing of a confession without the imposition of any physical coercion, and, finally, his being taken before a magistrate.

## Conclusions of Law

1. This Court has jurisdiction to adjudicate this petition for a writ of habeas corpus. 28 U.S.C. §§ 2241 and 2243.

2. Due process of law has not been denied to an individual who pleads guilty while represented by counsel of his own choosing and after having been duly admonished.

3. Due process of law has not been denied to such an individual who, commencing more than four years after his plea, repeatedly attempts to secure a copy of the transcript of that plea but who is unsuccessful in each attempt because no copy can be found.

4. A writ of habeas corpus may not be granted to one who, while represented by counsel of his own choosing and after having been duly admonished, pleads guilty even though prior thereto he was the victim of (1) an unconstitutional search and seizure and (2) an unreasonable delay in being taken before a magistrate, and even though at least in part as a result thereof, he was induced to confess to the crime.

5. Petitioner has not demonstrated that he is in custody in violation of the Constitution, laws or treaties of the United States.

## Opinion

In May, 1962, petitioner, Henry H. Staples, filed in this Court his petition in forma pauperis for a writ of habeas corpus. Thereafter, the Court appointed Mr. Thomas Sullivan of the Illinois Bar to represent petitioner here. Mr. Sullivan has done so with skill and diligence for which the Court expresses its appreciation.

Many of the events forming the background of this litigation occurred more than 20 years ago. Several persons who were involved are no longer living; others, although perhaps alive, have not been located. Time has dimmed the memories of those who are alive and have been found. No transcript presently exists of certain courtroom proceedings which took place in January, 1943, which petitioner charges, and respondent denies, were conducted unconstitutionally. But despite these obstacles, as a result of the research and presentation by each party herein, it seems reasonably clear that the chronology which appears in the findings of fact accurately describes the history of this litigation.

The proceedings in this Court constitute but the most recent of petitioner's efforts to obtain judicial review of his conviction in 1943. His many attempts to obtain a trial transcript—the first was by a letter dated November 4, 1947 (Petitioner's Memorandum filed May 10, 1963, Exhibit B; see also Exhibits C, D and E)—have all proved fruitless primarily because no transcript has ever been found. However, he was accorded a post-conviction hearing in 1956 by the Circuit Court of St. Clair County at which he alone testified in his own behalf and several witnesses testified for the State. That court held for the State and the Illinois Supreme Court affirmed. People v. Staples, No. 1978, Ill.Sup.Ct., May 23, 1958, cert. denied, 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed.2d 84 (1958).

On June 21, 1963, following consideration of the many documents submitted by both petitioner and respondent, this Court held a hearing. Petitioner was present, but he elected not to testify. Moreover, he offered no evidence in support of his contentions that a confession had been obtained from him by means of physical duress, that he had received an unfair trial, that he had not knowingly pleaded guilty, and that he had demanded and been denied a jury trial, a trial delay, and a change of counsel. The uncontroverted testimony was that petitioner confessed without having been subjected to physical coercion and that he pleaded guilty after admonishment. Some of the evidence presented in this Court does bear on petitioner's allegations that (1)

he was not brought before a magistrate within a reasonable period of time;[1] (2) his "consent" to the search of his home, coming at a time when he was in police custody, was not truly consensual;[2] and (3) his confession was the result of his being interrogated during the period of unreasonable delay and his being confronted with property seized without a warrant in an unconstitutional search. Before reaching these contentions, a preliminary matter will be discussed.

Petitioner charges that he has been denied due process of law because he has been unable to obtain a stenographic transcript of the relevant 1943 proceeding. No such transcript presently exists, and therefore some practical accommodation must be made. Cf. Norvell v. Illinois, 373 U.S. 420, 424, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963).

■ Petitioner had ample opportunity, both before the Circuit Court of St. Clair County in 1956 and here, to present evidence that Judge Joyce conducted other than a fair and orderly proceeding. Apart from his own testimony at the 1956 hearing, petitioner has offered no such evidence. On the other hand, a considerable amount of testimony has been presented which demonstrates that Judge Joyce adequately protected petitioner's constitutional rights, that petitioner was represented by competent counsel of his own choice and was duly admonished, and that thereafter he pleaded guilty. Due process of law has not been denied to such an individual who, commencing more than four years after entering his plea, repeatedly attempts to secure a copy of the transcript of that plea but who, each time, is unsuccessful because no copy can be found. Norvell v. Illinois, supra.

More serious is petitioner's contention that his constitutional rights were violated by reason of (a) the delay in taking him before a magistrate, (b) the nonconsensual search and seizure, and (c) the confession resulting therefrom. Petitioner contends that, but for the unreasonable delay and unconstitutional search and seizure, he would never have confessed, and if he had not confessed (or if he had realized that the confession and seized property were inadmissible in evidence against him) he would not have pleaded guilty. He does not, however, here dispute that he pleaded guilty while represented by competent counsel of his own choice and after having been admonished as to the consequences of his plea.

■■ Despite the seriousness of the alleged constitutional violations, the rule in this Circuit[3] and elsewere[4] is that a guilty plea constitutes a waiver of any

---

1. Mr. Edgar Sherrod, in 1942 and 1943 a member of the East St. Louis, Illinois, police department, stated that Staples was arrested before 8 a. m. on October 12, 1942, questioned, taken to his home where certain bloodstained articles were found and seized, taken to a police station, questioned further for several hours until he confessed, and not taken before a magistrate until the following day.

2. It has been held that an individual who is actually guilty of a crime, who is arrested, and who, while in custody and denying his guilt, acquiesces to a search of his home where he knows incriminating evidence will be found may be presumed to have so "consented" involuntarily. Such an individual's consent in all probability constitutes mere recognition of and subservience to authority and is not an intentional waiver of constitutional rights protected by the Fourth Amendment. See, e. g., Hall v. Warden, 313

F.2d 483 (4th Cir.), cert. denied, Peppersack v. Hall, 374 U.S. 809, 83 S.Ct. 1693, 10 L.Ed.2d 1032 (1963); Channel v. United States, 285 F.2d 217 (9th Cir. 1960); Judd v. United States, 89 U.S. App.D.C. 64, 190 F.2d 649 (1951). Cf. Johnson v. United States, 333 U.S. 10, 12–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Pekar v. United States, 315 F.2d 319 (5th Cir. 1963). Thus, although petitioner may well be guilty of the crime for which he was convicted, he was apparently the victim of an unconstitutional search and seizure.

3. See, e. g., United States v. French, 274 F.2d 297 (7th Cir. 1960) (unreasonable delay in taking petitioner before commissioner, tainted confession resulting therefrom); United States v. Kniess, 264 F.2d 353 (7th Cir. 1959) (similar to facts in French case, supra); United

constitutional or other defects in the proceeding except those relating to the jurisdiction of the court. Accordingly, a writ of habeas corpus must be denied. I am constrained, at the same time, however, to comment briefly on the implications of the plea of guilty-waiver doctrine as reflected in the instant case.

■■ The Fourth Amendment to the United States Constitution, which, it is clear, in the light of the decisions cited earlier,[5] was here violated, is intended to protect citizens in the privacy of their persons, their property and their homes. Cf. Mapp v. Ohio, 367 U.S. 643, 656–657, 660, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (dicta). It is intended to protect the guilty as well as the innocent. McDonald v. United States, 335 U.S. 451, 453, 69 S.Ct. 191, 93 L.Ed. 153 (1948) (dictum). Protection of an occasional guilty person from conviction by evidence obtained in violation of the Fourth Amendment is an inevitable price which we pay so that all of us may be secure from harassment by unlawful searches and seizures.

The decisions which deny to one who pleads guilty the opportunity thereafter to challenge a constitutional violation seem to me to weaken that security from harassment, for they encourage police officers to invade privacy and conduct interrogations in the hope of obtaining incriminating evidence, confessions and, ultimately, guilty pleas. If the constitutional defect is not discovered until after judgment, they (police and prosecution) have successfully deprived a defendant of his constitutional rights. Such a doctrine certainly does not discourage violations of the Fourth and Fifth Amendments.

Although petitioner undoubtedly did enter a plea of guilty and the tainted evidence was never in fact used in a trial against him, he must necessarily have been influenced in so pleading by the knowledge that the prosecution possessed the incriminating evidence and his confession obtained by confronting him with that evidence. Furthermore, while we have no way of knowing what considerations went through the minds of petitioner and his counsel, it is reasonable to assume that the plea of guilty was induced at least in part because petitioner, who was charged with a capital offense, hoped for some leniency in the sentence to be imposed.

To conclude, then, that the guilty plea constituted an intentional waiver of petitioner's objections to any constitutional violations which had occurred, just as though the tainted evidence and confession had been introduced at a trial and no objection had been raised thereto, seems to me to read more into the plea than is warranted by any reasonable inference from the facts. Certainly no evidence in this record suggests that petitioner did in fact so intend. The plea of guilty-waiver doctrine not only whitewashes constitutional violations but in addition, as applied to the facts of the instant case, results in a conclusion unsupported either by evidence or by logic.

There remains the question, with respect to the unconstitutional search and seizure, whether all state remedies have been exhausted. 28 U.S.C. § 2254. Although the search and seizure issue has never been presented to the courts of the State of Illinois as a ground for granting the relief petitioner here seeks, respond-

States v. Sturm, 180 F.2d 413 (7th Cir.), cert. denied, 339 U.S. 986, 70 S.Ct. 1008, 94 L.Ed. 1388 (1950) (improper arrest, unconstitutional search and seizure and unreasonable delay in taking petitioner before commissioner). .

4. See, e. g., Thomas v. United States, 290 F.2d 696 (9th Cir. 1961), cert. denied, 368 U.S. 964, 82 S.Ct. 446, 7 L.Ed.2d 401 (1962) (unreasonable search and seizure); United States v. Morin, 265 F.2d 241 (3rd Cir. 1959) (unreasonable

delay in taking petitioner before commissioner, tainted confession resulting therefrom); Hall v. United States, 259 F.2d 430 (8th Cir. 1958), cert. denied, 359 U.S. 947, 79 S.Ct. 728, 3 L.Ed.2d 680 (1959) (similar to facts in Morin case, supra); Gonzalez v. United States, 210 F.2d 825 (1st Cir. 1954), cert. denied, 353 U.S. 966, 77 S.Ct. 1050, 1 L.Ed.2d 915 (1957) (unconstitutional search and seizure).

5. Note 2, supra.

ent makes no contention that such an opportunity is *presently* available. Cf. Fay v. Noia, 372 U.S. 391, 435, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In view of the facts that (a) petitioner never did appeal his conviction, (b) he has already been granted a post-conviction hearing and an Illinois Supreme Court review thereof, and (c) the sentencing court is not alleged to have lacked jurisdiction over his person or the subject matter, it appears that no state remedy is now open.

Under the applicable decisions, petitioner has not demonstrated that he is in custody in violation of the Constitution, laws or treaties of the United States because his guilty plea is deemed to waive the constitutional or other defects in the proceedings. Accordingly, the petition must be denied, and the cause is hereby dismissed.