## NORVELL v. ILLINOIS.

No. 513.   Argued April 24, 1963.—Decided May 27, 1963.

*Thomas P. Sullivan* argued the cause and filed briefs for petitioner.

*William C. Wines,* Assistant Attorney General of Illinois, argued the cause for respondent.   With him on the brief were *William G. Clark,* Attorney General of Illinois, and *Raymond S. Sarnow, A. Zola Groves* and *Edward A. Berman,* Assistant Attorneys General.

Mr. Justice Douglas delivered the opinion of the Court.

Petitioner was convicted of murder in the Illinois courts in 1941 and sentenced to 199 years in prison. Though indigent, he had a lawyer at the trial.

On the date of the sentence the docket entry reads: "Defendant Willie Norvell's motion for allowance of 90 days' time in which to prepare and file his bill of exceptions allowed."   Presumably petitioner's lawyer made that motion, though the record does not indicate one way or the other.   Petitioner tried to get a transcript.   But again whether he acted on his own or through his lawyer we do not know.   We do know, however, that because he

was indigent he was unable to pay the costs of the transcript and therefore did not obtain it; and he did not, moreover, pursue an appeal.

In 1956 we decided *Griffin* v. *Illinois,* 351 U. S. 12, holding on the facts of that case that it was a violation of the Fourteenth Amendment. to deprive a person because of his indigency of any rights of appeal afforded all other convicted defendants. And see *Draper* v. *Washington,* 372 U. S. 487; *Eskridge* v. *Washington,* 357 U. S. 214. Cf. *Burns* v. *Ohio,* 360 U. S. 252; *Smith* v. *Bennett,* 365 U. S. 708. Thereupon the Supreme Court of Illinois adopted Rule 65–1 (Smith-Hurd's Ill. Ann. Stat., c. 110, § 101.65–1) by which the State provides a free trial transcript to every indigent person convicted of crime, whether he was convicted prior to the *Griffin* decision or thereafter. An important exception to that rule, applicable here, is the following:

> ". . . In the event the court finds that it is impossible to furnish petitioner a stenographic transcript of the proceedings at his trial because of the unavailability of the court reporter who reported the proceedings and the inability of any other court reporter to transcribe the notes of the court reporter who served at the trial, or for any other reason, the court shall deny the petition." Rule 65–1 (2).

On motion of petitioner in 1956 the trial court was requested to furnish a stenographic transcript of his trial. The trial judge, finding that petitioner had satisfied the conditions prescribed in the Rule, ordered the official shorthand reporter to transcribe his notes and furnish petitioner with a copy of the transcript. It subsequently appeared, however, that the official reporter in question had died some years earlier and that no one could read his shorthand notes. An effort was then made to reconstruct the transcript through the testimony of persons who

attended the trial. Ten witnesses testified, including petitioner, but none could recall much of the evidence introduced at the 1941 trial. Thus in 1956 it was not possible for Illinois to supply petitioner with the adequate appellate review of his 1941 conviction which he failed to pursue at that time. Cf. *Eskridge* v. *Washington, supra.*

The trial judge who heard this motion entered an order denying petitioner a new trial. The Supreme Court of Illinois affirmed. 25 Ill. 2d 169, 182 N. E. 2d 719. The case is here on a petition for a writ of certiorari. 371 U. S. 860.

The issue in the case is whether Illinois has made an "invidious discrimination" against petitioner. *Griffin* v. *Illinois, supra,* p. 18. More precisely, the question is whether when a transcript cannot subsequently be obtained or reconstructed through no fault of the State, may it constitutionally draw the line against indigents who had lawyers at their trial but after conviction did not pursue their remedy? Illinois on the face of its rules draws no such distinction. But Illinois in the application of its rules has denied relief in such a case.[1] And so we have the narrow question—whether a State may avoid the obligation of *Griffin* v. *Illinois,* where, without fault, no transcript can be made available, the indigent having had a lawyer at the trial and no remedy having been sought at the time.

If it appeared that the lawyer who represented petitioner at the trial refused to represent him on the appeal and petitioner's indigency prevented him from retaining another, we would have a different case. Cf. *Douglas* v.

---

[1] The case is analogous to those where this Court's review of a state judgment sustaining a state law is directed to the statute "as applied and enforced in respect of the situation presented." *Fiske* v. *Kansas,* 274 U. S. 380, 385. And see *Terminiello* v. *Chicago,* 337 U. S. 1, 4.

*California,* 372 U. S. 353. Petitioner, who testified at the hearing on the motion, made no such claim. Nor did the lawyer, who testified as follows:

> "I have no independent recollection whether there were motions for a new trial made in the regular course after the trial. All of the constitutional guarantees which were afforded my client, Willie Norvell, were asserted at that time. I have no independent recollection of this case, but I give the defendant every constitutional guarantee that the law affords.
>
> "I have no recollection now on whether or not I was ever called upon for an appeal in this matter. I have no recollection one way or the other whether I was called upon to obtain a transcript of the trial."

We do not say that petitioner, having had a lawyer, could be found to have waived his rights on appeal. We only hold that a State, in applying *Griffin* v. *Illinois* to situations where no transcript of the trial is available due to the death of the court reporter, may without violation of the Due Process or Equal Protection Clause deny relief to those who, at the time of the trial, had a lawyer and who presumably had his continuing services for purposes of appeal [2] and yet failed to pursue an appeal. Exact equality is no prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment. See *Douglas* v. *California, supra.* As we said in *Tigner* v. *Texas,* 310 U. S. 141, 147:

> ". . . The Fourteenth Amendment enjoins 'the equal protection of the laws,' and laws are not abstract propositions. They do not relate to abstract units A, B and C, but are expressions of policy arising out of specific difficulties, addressed to the attainment of specific ends by the use of specific remedies. The

---

[2] The record in *Griffin* v. *Illinois, supra,* shows that such was not the case there.

Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same."

When, through no fault of the State, transcripts of criminal trials are no longer available because of the death of the court reporter, some practical accommodation must be made. We repeat what was said in *Metropolis Theatre Co.* v. *Chicago,* 228 U. S. 61, 69–70:

"The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific. . . . What is best is not always discernible; the wisdom of any choice may be disputed or condemned."

The "rough accommodations" made by government do not violate the Equal Protection Clause of the Fourteenth Amendment unless the lines drawn are "hostile or invidious." *Welch* v. *Henry,* 305 U. S. 134, 144. We can make no such condemnation here. For, where transcripts are no longer available, Illinois may rest on the presumption that he who had a lawyer at the trial had one who could protect his rights on appeal.

*Affirmed.*

MR. JUSTICE HARLAN concurs in the result.

MR. JUSTICE GOLDBERG, with whom MR. JUSTICE STEWART joins, dissenting.

I must respectfully dissent because the majority ignores what to me is the key to disposition of this matter. The Illinois Supreme Court decided this case under a misapprehension as to a crucial point of federal constitutional law, but for which it might have resolved the ultimate question in favor of, rather than against, the petitioner.

The Illinois court concluded that the decision of this Court in *Griffin* v. *Illinois,* 351 U. S. 12, operated prospec-

tively, and not retroactively, in the sense that it invali-
dated only "existing financial barriers" to appeal. Given
its view of *Griffin,* it was unnecessary for the state court
to consider whether the petitioner, who concededly could
not obtain a transcript at the time of his original convic-
tion in 1941 because of his indigency, was *at that time*
deprived of his constitutional rights. Enabled by this
erroneous interpretation of *Griffin* to put aside this basic
constitutional issue, the Illinois Supreme Court held
only that its present rule, as applied to deny the petitioner
a transcript *now* on his delayed appeal, was not uncon-
stitutional because that denial was based solely upon the
present unavailability of the transcript, and not upon
anything related to the petitioner's indigency. The ma-
jority of this Court seems today to approve at least that
holding of the state court, though on grounds different
from those relied upon below.

The State Supreme Court was in error in its belief that
the principles of *Griffin* have no application to denials of
transcripts which occurred before *Griffin* was decided.
*Griffin* was a constitutional decision vindicating basic
Fourteenth Amendment rights and is no more to be re-
stricted in scope or application in time than other consti-
tutional judgments. This, it seems to me, is the clear
import of this Court's decision in *Eskridge* v. *Washing-
ton,* 357 U. S. 214.*

---

*The Illinois court said simply that *Eskridge* "did not held that
the failure to furnish defendant with a free transcript in 1935 denied
him a right guaranteed by the fourteenth amendment, but held that
the failure in 1956 to furnish him with a free transcript which was
still available denied him of such a right." 25 Ill. 2d 169, 173, 182
N. E. 2d 719, 720–721. *Eskridge* was thus read to mean merely
"that such financial barriers could no longer be imposed by the
State even though the indigent defendant was sentenced prior to the
time the restrictions were invalidated." *Ibid.* The issue in *Eskridge,*
however, as presented on review of a 1956 state habeas corpus pro-
ceeding, was whether the petitioner there had been deprived of a

Of course, we do not know how the Illinois court would have resolved the petitioner's claim that he is entitled either to a transcript or a new trial if it had viewed *Griffin* as having retroactive effect and as controlling with respect to the constitutional deprivation which may have occurred in 1941. Illinois has shown a broad and commendable latitude in implementing the principles enunciated in *Griffin,* and I would not presume to predict what its courts might do under a proper reading of that case. Because Illinois has not passed upon what is perhaps the controlling issue in the case, and because we ought not to anticipate and resolve difficult constitutional questions unless necessary, I would vacate and remand the case to the Supreme Court of Illinois to permit it to decide the question which it treated as foreclosed only because it believed *Griffin's* application not to be fully retroactive.

---

constitutional right when first convicted in 1935 because he was *then* denied a transcript with which to prosecute an appeal as an indigent; this Court decided that issue in favor of Eskridge.