UNITED STATES of America ex rel. Joel SMITH, Appellant,

v.

The Hon. Daniel McMANN, Warden of the Auburn State Prison, Auburn, New York, Appellee.

No. 336, Docket No. 32609.

United States Court of Appeals Second Circuit.

Argued Jan. 17, 1969.

Submitted to the *in banc* Court Oct. 9, 1969.

Decided Oct. 10, 1969.

Waterman, Circuit Judge, concurred in part and dissented in part and Friendly, Circuit Judge, Lumbard, Chief Judge, and Moore, Circuit Judge, dissented.

Phylis Skloot Bamberger, New York City (Anthony F. Marra, New York City, on the brief), for appellant.

Michael Jaffe, Asst. Atty. Gen., New York City (Samuel A. Hirshowitz, First Asst. Atty. Gen. and Louis J. Lefkowitz, Atty Gen., of New York, New York City, on the brief), for appellee.

Before LUMBARD, Chief Judge, MEDINA, Senior Circuit Judge,* WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS, ANDERSON and FEINBERG, Circuit Judges.

MEDINA, Senior Circuit Judge (with whom Judges Smith, Kaufman, Hays, Anderson and Feinberg concur):

Joel Smith, a New York State prisoner, was convicted in the former New York County Court, Kings County, of manslaughter in the first degree. On October 28, 1959, he was sentenced to a term of imprisonment of from 10 to 20 years. He filed no notice of appeal. At the time of trial he was 16 years old and was represented by counsel retained by his parents. He now appeals from an order of Judge Mishler of the United States District Court for the Eastern District of New York, dismissing without a hearing the prisoner's application for a writ of habeas corpus. As we construe Smith's claim it is that he was denied the equal protection of the laws in that he was deprived of his right to appeal from his judgment of conviction because he was indigent and did not know nor was he informed by anyone of the fact that he could prosecute an appeal at the expense of the state. We find that Smith was indigent at the time sentence was imposed. As the evidence is conflicting relative to Smith's knowledge that he could prosecute an appeal at the expense of the state and this issue was not resolved by Judge Mishler, the case is remanded with directions.

## I.

### Procedural and Decisional Background

On March 18, 1963 the Supreme Court handed down six decisions which ushered in a new era in criminal procedure for both the federal and the state

* Sitting pursuant to 28 U.S.C. § 46(c) (1964).

courts.[1] Of these the one most pertinent to the case before us is Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L. Ed.2d 811 (1963). There indigent defendants had been denied counsel on appeal because the court below stated it had "gone through the record" and had reached the conclusion that "no good whatever could be served by the appointment of counsel." The decision is broadly based and requires that counsel on appeal be afforded by the state regardless of the merits of the case. And *per curiam* on June 22, 1964 the Supreme Court gave the rule of Douglas v. California retroactive effect.[2]

The notion that the state should be held responsible for the appointment of counsel to defend indigent persons charged with crime is of ancient vintage. But the concept of responsibility for the appointment of counsel to prosecute a criminal appeal by an indigent after conviction of crime developed more slowly. Many typical fact situations had engaged the attention of the courts prior to the date of the decision of Douglas v. California.

Despite early judicial statements to the general effect that a failure to serve or file a timely notice of appeal was a fatal and jurisdictional defect, the courts prior to the decision of Douglas v. California were groping for some formula that would provide relief to an indigent person convicted of crime who had failed to take a timely appeal. As the question generally arises in connection with state *coram nobis* and federal habeas corpus proceedings, the poorly drafted petitions were often confusing and the fact situations presented are of seemingly endless variety. But there is the common theme

of a conversation between the convicted indigent defendant and his assigned or retained lawyer, sometimes in the presence of the sentencing judge, often concerning the expense of an appeal, and attempts to get money from the families, with more or less explicit indications by the convicted defendant that he desired to appeal or would appeal if he had the money to do so. Occasionally the lawyer stated that he thought the chances of reversal were so slim that he could not recommend an appeal. In some cases the prisoner asserted that he had told his lawyer to take an appeal but no notice of appeal had been served or filed.

The case of Joel Smith now before us is one of this class of cases. We shall discuss the evidence in some detail later. But it so happened that there were two other similar but not identical cases going through the New York courts at the same time that Joel Smith filed his first *coram nobis* petition seeking relief on the ground that he had been unconstitutionally deprived of his right of appeal. And these particular two cases in the course of time seriously and adversely affected the decision of Smith's claim by the New York courts, and by a curious turn of fate, they also affected the decision by this Court in United States ex rel. Bjornsen v. LaVallee, 364 F.2d 489 (1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1313, 18 L.Ed.2d 351 (1967), principally relied on by Judge Mishler below.

The two cases to which we refer were People v. Marchese, in which the New York Appellate Division of the Supreme Court, Second Department, affirmed on July 1, 1963 an order denying Marchese's petition for *coram nobis* without a hearing, 19 A.D.2d 728, 242 N.Y.S.2d 464, and

1. Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745, 9 L.Ed.2d 770 (1963); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963).

2. Smith v. Crouse, 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (1964). See especially the authorities collected in Donnell v. Swenson, 258 F.Supp. 317 (W.D. Mo.1966) and those in the opinion of the Court of Appeals affirming the District Court, Swenson v. Donnell, 382 F. 2d 248 (8th Cir. 1967).

People v. Kling, in which the same Court on July 8, 1963 affirmed an order denying Kling's petition for *coram nobis* without a hearing, 19 A.D.2d 750, 242 N.Y.S. 2d 977. In *Marchese* the petition asserted that the retained lawyer had agreed to file a notice of appeal but had not done so. In *Kling* the petition alleged a request to assigned counsel to file a timely notice of appeal and a promise to do so, but no appeal had been taken. The reasoning of *Marchese* was that "the failure to file a timely notice of appeal was attributable to defendant's retained attorney and not to the law-enforcement agencies of the State." In *Kling* the reasoning was: (1) that the acts complained of were not those of the state; (2) that there was no showing of reversible error; and (3) that the authority of assigned counsel ceased with the entry of the judgment of conviction.

We return to Smith. Doubtless with the aid of his fellow prisoners Smith began a number of futile *coram nobis* proceedings, all of which were denied without a hearing and the details of which are not before us. Then, and still before the Supreme Court handed down its decision in Douglas v. California, Joel Smith hit upon the claim, more or less confusingly stated, that he was indigent and was not told by his lawyer or anyone else that he could appeal at the expense of the state. This petition for *coram nobis* was denied by the former New York County Court, Kings County, without a hearing, on August 9, 1962. His appeal from this first *coram nobis* rejection was decided by the Appellate Division, Second Department, on July 1, 1963, 19 A.D.2d 728, 242 N.Y.S.2d 709, and the dismissal was on the authority of the decision handed down by that same Court in People v. Marchese on the same date. The three cases— Marchese, Joel Smith and Kling—then proceeded *pari passu* to the New York Court of Appeals, where *Kling* was affirmed on February 27, 1964 and *Smith*

and *Marchese* both were affirmed on the same day, April 30, 1964,[3] but with three distinguished judges dissenting in each of the three cases: Chief Judge Desmond, and Judges Fuld and Bergan. It is interesting to note that this action was taken by the New York Court of Appeals only shortly before the Supreme Court held on June 22, 1964 that Douglas v. California was to be applied retroactively. Smith v. Crouse, *supra*, footnote 2, 378 U.S. 584, 84 S.Ct. 1929.

On May 17, 1965 applications for writs of certiorari were denied by the Supreme Court in all three cases: 381 U.S. 910 and 920, 85 S.Ct. 1540, 1539, 14 L.Ed.2d 436, 440. The action taken in *Marchese* was unanimous. In *Kling* and in *Smith* Mr. Justice Douglas noted his view that certiorari should have been granted. Thus, so far as we are aware, there was a final disposition of Smith's first *coram nobis* proceeding. These denials of certiorari, however, by no means represent any view of the Supreme Court on the merits of the constitutional claims asserted on Smith's behalf. See, e. g., Brown v. Allen, 344 U.S. 443, 489–497, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Sunal v. Large, 332 U.S. 174, 181, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947); United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361 (1923).

In the meantime, on July 30, 1964, and after Douglas v. California had been given retroactive application, Joel Smith filed his second *coram nobis* proceeding in the New York Supreme Court, Kings County. This is the proceeding now before us. In the petition Joel Smith again asserted that he had been deprived of his right of appeal because of the delinquency of his counsel, but he coupled this allegation with a new claim that his right to appeal had been frustrated by the refusal of the prison authorities to permit him to use law books until after the time to appeal had expired. On January 4 and 11, 1965, a full hearing was conducted by New York Supreme Court Jus-

---

3. People v. Kling, 14 N.Y.2d 571, 248 N. Y.S.2d 661, 198 N.E.2d 46; People v. Marchese, 14 N.Y.2d 695, 249 N.Y.S.2d 888, 198 N.E.2d 916; People v. Smith, 14 N.Y.2d 696, 249 N.Y.S.2d 889, 198 N.E.2d 916.

tice McDonald. It was held that the decision by the Court of Appeals on the first *coram nobis* proceeding disposed of the charge that his counsel had failed to file the notice of appeal, and, on amply sufficient testimony by a prison official, it was in effect held that petitioner had not been denied the use of law books. The petition was dismissed. At the hearing, however, it became clear that Joel Smith was indigent at the time sentence was imposed on October 28, 1959; and there was a conflict in the testimony of Joel Smith and attorney Pelcyger on the critical issue of whether or not Joel Smith knew that he could appeal without expense to himself. As Joel Smith then became dissatisfied with the services of the Legal Aid Society, and the Appellate Division refused to assign other counsel, Joel Smith presented his case to the Appellate Division and to the Court of Appeals, *pro se*, with the result that he lost in all the New York State courts and thus he exhausted his state remedies in connection with the second *coram nobis* proceeding.

And so we come at last to the petition for habeas corpus that was denied without a hearing by Judge Mishler by the order now before us for review. This petition squarely raises the claim of violation of constitutional rights by denying equal protection of the laws because Joel Smith was indigent at the time of sentence and took no appeal because he did not know and was not told that he could take an appeal at the expense of the state. Judge Mishler's order of dismissal is dated June 16, 1967.

This brings us to a consideration of the progress through the New York courts of Bjornsen's case, which culminated in the decision of this Court, United States ex rel. Bjornsen v. LaVallee, 364 F.2d 489 (1966), cert. denied, 386 U.S. 998, 87 S. Ct. 1313, 18 L.Ed.2d 351 (1967). This is one of the decisions principally relied

upon by Judge Mishler in deciding the case now before us.[4]

Bjornsen was sentenced in a New York court in 1952. His application for *coram nobis*, was based upon an allegation that he asked a friend to speak to his assigned counsel "about an appeal" and the friend was told by assigned counsel "that there was very little chance of success in the matter." No appeal was taken. The dismissal of the *coram nobis* proceeding on November 4, 1963 was based upon the Appellate Division holdings in *Marchese* and *Kling*. People v. Bjornsen, 40 Misc. 2d 986, 244 N.Y.S.2d 551 (Sup.Ct.N.Y. County). This case reached our Court some three years later via an application for habeas corpus and the dismissal of the writ by Judge Foley in the Northern District of New York was affirmed on the ground that Bjornsen "never asked anyone representing the State for advice on his right to appeal or for assignment of counsel on appeal, and never informed any representative of the State of his desire to appeal." This reflected the reasoning of *Marchese* and *Kling*. The *Per Curiam* of this Court added the comment (364 F.2d at pages 490–491):

> His claim of constitutional deprivation necessarily rests on the assertion that the State had an affirmative obligation to advise him of his right to appeal and of the procedure to enforce that right.

It is interesting to note that, after working its way through the New York courts, Bjornsen's application to the Supreme Court for certiorari was denied on May 17, 1965 (381 U.S. 917, 85 S.Ct. 1544, 14 L.Ed.2d 437), the same day on which similar applications for certiorari were denied in *Marchese, Kling* and *Joel Smith*.

There were two further significant developments. The first of these was the promulgation by the four Appellate Divisions of the New York Supreme

---

4. Judge Mishler also stated that he had examined the trial record and was of the opinion that an appeal "would be so plainly without arguable basis that it would have been dismissed as frivolous," citing Fay v. Noia, 372 U.S. 391, 428, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Court of rules,[5] adopted in 1964 and amended in 1966, now requiring assigned or retained counsel "immediately after the pronouncement of sentence" to advise the defendant in writing of his right to appeal, the time within which and the manner of taking the appeal, obtaining a transcript of the testimony and "of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal as a poor person." Counsel is specifically required to ascertain whether the defendant wishes to appeal, and, if so, to serve and file the necessary notice of appeal. The parallel and slightly different provision of Rule 32(a) of the Federal Rules of Criminal Procedure, as amended in 1966, effective July 1, 1966, is also set forth in the margin.[6]

The second significant development was the overruling of *Marchese* and *Kling* by the New York Court of Appeals on February 27, 1969, in People v. Callaway, 24 N.Y.2d 127, 299 N.Y.S.2d 154, 247 N.E.2d 128, and the decision by the same court of a companion case, People v. Montgomery, 24 N.Y.2d 130, 299 N.Y.S. 2d 156, 247 N.E.2d 130. Judge Keating's clear and comprehensive opinion in *Montgomery* contains the following statement:

There is no question that the primary duty of furnishing legal advice to indigent defendants is a State responsibility. Either by permitting assigned counsel's role to terminate at the end of trial, or failing to provide safeguards against lack of information, the State permitted a critical time period to lapse of which the defendant was unaware. Since this lack of awareness occurred because of the defendant's poverty, he must be accorded a hearing to determine whether in fact no one informed him of his right to appeal.

Had this been New York's interpretation of the applicable provisions of the federal constitution at the time of the decision of Joel Smith's first *coram nobis* proceeding on August 9, 1962 there seems little reason to doubt that Judge Rinaldi would have conducted a hearing to determine the issue of fact arising out of the con-

5. See 22 New York Codes, Rules and Regulations Section 606.5 (1968) (Rules of the Supreme Court, Appellate Division, First Department):

(b) *Notification of right to appeal.* (1) *After conviction and sentence.* Where there has been a conviction after trial or otherwise, or where there has been an adverse decision upon an application in the nature of a writ of error coram nobis or a writ of habeas corpus, it shall be the duty of counsel, retained or assigned, and of the public defender, immediately after the pronouncement of sentence or the service of a copy of the order disposing of the application in the nature of a writ of error coram nobis or a writ of habeas corpus, to advise the defendant in writing of his right to appeal, the time limitations involved, the manner of instituting an appeal and of obtaining a transcript of the testimony, and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal as a poor person. It shall also be the duty of such counsel to ascertain whether defendant wishes to appeal and, if so, to serve and file the necessary notice of appeal.

(c) *Notification to defendants who appear without counsel.* (1) *After conviction or denial of coram nobis.* If a defendant has appeared *pro se*, the trial court shall advise a defendant of his right to appeal and of the right of a person unable to pay the cost of an appeal to apply for leave to appeal as a poor person. If the defendant so requests, the clerk of the court shall prepare and file and serve forthwith a notice of appeal on behalf of the defendant.

Almost precisely identical rules have been established by the Appellate Divisions of the other three Departments. See 22 New York Codes, Rules and Regulations Sections 671.3; 671.5; 821.2; 821.3; 1022.13 (1968).

6. Rule 32 of the Federal Rules of Criminal Procedure, as amended February 28, 1966, effective July 1, 1966, reads:

(2) *Notification of Right to Appeal.* After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to appeal and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in *forma pauperis*. If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant.

flicting versions of Joel Smith on the one hand and his lawyer Eugene Pelcyger on the other.

It is our responsibility, however, independently to pass upon the constitutional questions now properly before us. To remand the case for reconsideration by the New York State courts after the lapse of so many years would be, we think, most unjust and undesirable. Roberts v. La-Vallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed. 2d 41 (1967). Accordingly, after concluding this historical statement of the procedural and decisional background, we proceed to state our reasons for the remand of the case to Judge Mishler.

## II.

*An Application of the Principles of Douglas v. California Requires a Reversal and the Overruling of Our Former Decision in United States ex rel. Bjornsen v. LaVallee, 364 F.2d 489 (2d Cir. 1966).*

■ We think the only practical, logical and fair interpretation to be given to Douglas v. California is that it imposes upon the state a duty to warn every person convicted of crime of his right to appeal and his right to prosecute his appeal without expense to him by counsel appointed by the state, if he is indigent. The right to appeal at the expense of the state is mere illusion if the convicted indigent defendant does not know such a right exists. And the one way to make sure that he does know is to tell him so.[7]

Such a simple and comprehensive construction avoids the complication of a variety of miscellaneous fact patterns that have no relevance whatever to the underlying principle of Douglas v. California, but which may frustrate and render ineffective its beneficent purpose.

Thus, for example, some courts, including our own, have, we think, been led astray by various forms of inquiry into the merit or lack of merit in the appeal,[8] of which the state prisoner has been deprived in violation of his constitutional rights. A decision on the question of the merit or lack of merit in the appeal is not, we think, relevant to a decision in this type of case of the question of infringement *vel non* of the prisoner's constitutional right to equal protection of the laws. It is enough to establish the prisoner's right to federal collateral relief that by reason of his indigence he has been deprived of his right to appeal by the action or inaction of the judicial instrumentalities of the state in which the judgment of conviction was entered.

Some courts have thought it of consequence to inquire whether the prisoner at the time of sentence or thereabouts said he wanted to appeal or requested his assigned or retained counsel to appeal. In United States ex rel. Bjornsen v. La Vallee, 364 F.2d 489 (2d Cir. 1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1313, 18 L.Ed.2d 351 (1967), a panel of this Court denied relief on this very ground, holding that without a request the Constitution does not require that an indigent be

---

7. As is indicated by the implementing rules referred to above, this will result in an unequivocal statement by the trial judge or by counsel for the convicted defendant sufficiently comprehensive to be applicable to indigents and non-indigents as well. This would seem to be the only practical way to handle the situation; and it also serves the purpose of cutting off future applications of the same nature, as a convicted defendant is unlikely successfully to assert that no such instructions were given by the trial judge or by his counsel in the face of a court record showing the instructions were given, or a written communication to the same effect from the lawyer to the defendant. .

8. See, e. g., Victor v. Lane, 394 F.2d 268 (7th Cir. 1968) ; United States ex rel. Maselli v. Reincke, 383 F.2d 129 (2d Cir. 1967) ; United States ex rel. Mitchell v. Follette, 358 F.2d 922 (2d Cir. 1966).

We note that the Supreme Court followed a similar approach to that which we adopt here in rejecting a 9th Circuit rule which required applicants for post-conviction relief under Section 2255 to show some likelihood of success. Rodriquez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969).

advised of his appeal rights. But the prisoner's plight is the same, whether or not he indicates a desire to appeal, in the face of the established facts of his indigency and his lack of knowledge that he could appeal at the expense of the state. Nor can the prisoner's right to relief depend upon knowledge of his indigence by the trial judge. For these reasons and because we believe that the earlier expression of this Court was not a proper construction of the rights given by Douglas v. California we now overrule *Bjornsen* and hold that it is no longer authoritative within this Circuit.

We need not inquire, nor is it of any relevance to the decision of this appeal, whether the prisoner's counsel, retained or assigned, was competent or not competent,[9] or whether he thought the appeal if taken would be successful or dismissed as frivolous. We are dealing here with the duty of the State of New York to afford constitutional protection to the prisoner.

Thus the critical findings in this case must be: Was Joel Smith indigent at the time he was sentenced by the New York State court? And, was Smith informed or did he know prior to the expiration of his time to appeal that he could appeal without cost to himself and with counsel appointed by the state?

We think one further observation will help to prevent any misunderstanding of our ruling. The New York and Federal rules above referred to in footnotes 5 and 6 do no more than implement what we think was at all times implicit in the landmark case of Douglas v. California. Thus the sound application of the doctrine of Douglas v. California, however, must be to grant relief irrespective of the existence or non-existence of implementing state or federal procedures, provided only that the two operative factors are present, i. e., the fact of indigence at the time of sentence and the fact that the prisoner did not know he could appeal without expense to himself. Indeed, in many cases, it is the very lack of such

implementing procedures that is responsible for the violation of the prisoner's constitutional rights.

Further, while the new rules set forth in footnotes 5 and 6 apply prospectively, the lack of such rules in the past does not purge an unconstitutional act of its taint. Indeed, if such or similar federal or state rules should in the future be disregarded by counsel and the trial judge should remain silent, a defendant convicted of a crime would still be deprived of his constitutional right to appeal, if he is indigent and is not informed and does not know that he may take an appeal without expense to himself.

We think the ruling we now make, far from cluttering the courts with a host of similar claims of ancient vintage, will help to clear the atmosphere and pave the way to a prompt disposition of such appeals as may come within its orbit. Our holding does not require that a verdict be upset for failure to warn, but only that the state should allow the completion of appellate review, with counsel if a prisoner so desires. If an appeal is taken and material trial error is found by a state appellate court, there may be a new trial required with the familiar difficulties of proof long after the event. But that is only if the state courts find that the conviction on which the imprisonment was based was wrong in the first place.

That does not occur frequently.

### III.

*The Absence of a Finding of Fact on a Critical Issue Requires a Remand.*

Fortunately, the full hearing before Justice McDonald on Joel Smith's second *coram nobis* proceeding contains the testimony of Joel Smith and his lawyer Eugene Pelcyger on the subject of the critical issues. While no findings were made by Judge Mishler, as he felt bound to decide the case as matter of law on the authority of United States ex rel. Bjornsen v. LaVallee, 364 F.2d 489 (2d

9. See United States ex rel. Maselli v. Reincke, 383 F.2d 129 (2d Cir. 1967).

Cir. 1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1313, 18 L.Ed.2d 351 (1967), as above stated, the uncontradicted evidence establishes and we now find as a fact that Joel Smith was indigent at the time he was sentenced on October 28, 1959. On the subject of Joel Smith's knowledge at the time that he could prosecute an appeal at the expense of the state the testimony is as follows:

Appellant, who was 16 at the time of the trial, with an 8th grade education and unemployed, categorically denied that he knew that he did not "have to have money to appeal." His description of his conversation with attorney Pelcyger is:

> I told the attorney that I would like to appeal. He asked did I have any money. I told him that I would have to get in touch with my family. He said without money I could not appeal your case. That was all that was said.

Attorney Pelcyger had no recollection of the case but his file revealed a letter written to appellant's parents on October 30, 1959 on the subject of complying with appellant's request that an appeal be taken and further advising the parents that if he did not hear from them "I shall take no further interest with respect to Joel's case." He testified:

> Incidentally, during my conversation [with] Smith, as I do with I think every defendant that is convicted, I have advised the defendant he has a right to appeal in person and just as I told Joe[l] he could appeal without a lawyer.

This, of course, is not the same as telling appellant that he could appeal without expense to himself and with a lawyer provided by the state. Nevertheless, appellant's credibility was at issue and he knew that a co-defendant with assigned counsel was taking an appeal. It is not disputed that, on the appeal of the co-defendant the People confessed error and the indictment against the co-defendant was dismissed by the Appellate Division.

The order appealed from is reversed and the case remanded for further consideration not inconsistent with this opinion, and for a further hearing and a finding on the subject: was Joel Smith informed or did he know prior to the expiration of his time to appeal that he could appeal without cost to himself and with counsel appointed by the state?

Reversed and remanded with directions.

WATERMAN, Circuit Judge (concurring and dissenting):

I concur in Judge Medina's excellent and exhaustive exposition of the applicable law, and it is with some reluctance that I find it necessary to file my dissent from the order remanding this proceeding to the district court for a hearing as to whether Smith was informed or knew prior to the expiration of his time to appeal that he could appeal without cost to himself and with the assistance of counsel appointed by the State. I would remand with instructions to sustain the writ on the record already made.

It is my view that the facts already recited by the experienced and highly respected New York State Supreme Court Justice who heard petitioner's coram nobis proceeding in January 1965, and summarized by Chief Judge Mishler below in his opinion handed down in June 1967 after he had examined this coram nobis record (and the trial record as well), establish that this sixteen year old indigent youth who had had no education beyond the eighth grade was deprived of his constitutional right timely to appeal his conviction because he was not timely informed by the trial counsel his family had retained, and did not otherwise know, that he could appeal his conviction without cost to himself and with the aid of state-appointed counsel. I would therefore reverse the holding below on the record already made and would order the court below to sustain relator's habeas corpus writ unless within a reasonable time to be fixed by the district court the People permit relator to file an appeal from his conviction in forma pauperis and to proceed with assigned counsel, see People v. Callaway, 24 N.Y.2d 127, 299 N.Y.S.2d 154, 156, 247 N.E.2d 128

(1969), where the Court of Appeals sets out a procedure to be followed. See also People v. Montgomery, 24 N.Y.2d 130, 299 N.Y.S.2d 156, 247 N.E.2d 130 (1969).

I quote from Chief Judge Mishler's opinion of June 16, 1967. Petitioner stated "that he had the following conversation with his attorney:

> "I told the attorney that I would like to appeal. He asked did I have any money. I told him I would have to get in touch with my family. He said without money I could not appeal your case. That was all that he said.

> "The petitioner's trial lawyer, an experienced practitioner in the field of criminal law, had no recollection of such a conversation, but his files substantiated the petitioner's version. His records showed that he wrote the petitioner's parents advising them of their son's desire to take an appeal, and indicating that if he failed to hear from them he would take no further interest in their son's case."

And

> · " * * * In this case, at most, there was a failure of retained counsel to fully advise his client of his right to appeal *in forma pauperis*, and to protect his client's right to appeal by simply filing a notice of appeal. The state is not an overseer or 'a surety for the proper performance of counsel, whether assigned or retained * * *' United States ex rel. Mitchell v. Follette, supra [358 F.2d 922] at 927."

As the quote by Judge Mishler from United States ex rel. Mitchell v. Follette lacks relevance now because the State, as set forth in People v. Montgomery, *supra*, 299 N.Y.S.2d at 159, 247 N.E.2d at 131, has accepted responsibility for seeing that an indigent minor is fully advised of his constitutional right to carry forward an appeal from a conviction and the record below is clear that Smith was indigent, was a minor, and was not fully advised, there can be no justification, in my view, for any further hearing or any further delay in granting petitioner the relief to which the record discloses he is entitled. See Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967).

FRIENDLY, Circuit Judge (dissenting) (with whom LUMBARD, Chief Judge, and MOORE, Circuit Judge, join):

Rules were adopted by the four Appellate Divisions of New York in 1964 (which were amended in 1966) and by the Supreme Court in 1966, see notes 5 and 6 to Judge Medina's opinion, requiring counsel for a convicted defendant, whether assigned or retained, to notify him of his right to appeal *in forma pauperis* and to provide against the running of time bars. Like the majority I welcome these rules as having effected what experience over the years had shown to be an exceedingly desirable reform. But I cannot agree that the Federal Constitution required New York in 1959 to find out whether Joel Smith, who had been represented at trial by retained counsel, no longer was able to afford a lawyer to take an appeal on his behalf.

Whether the majority's ruling rests on the equal protection clause of the Fourteenth Amendment, on the Sixth Amendment's guarantee of the right to the assistance of counsel as incorporated in the due process clause of the Fourteenth, or on the due process clause of the Fourteenth *simpliciter*, Smith is not entitled to relief unless *the State* deprived him of his constitutional rights. As Judge Wisdom observed in Pate v. Holman, 341 F.2d 764, 775 (5 Cir. 1965):

> For a petitioner to be entitled to post-conviction relief, it is not enough to show that indigency occasioned the petitioner's inability to employ counsel or to appeal; the petitioner must show that the *State* deprived him of his Fourteenth Amendment rights.

There was no problem about the existence of state action in the landmark decisions of the Supreme Court on which the majority relies. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100· L.Ed. 891 (1956), and Douglas v. California, 372

U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), were classic examples of state action—discriminations against the indigent apparent on the face of the statutes or rules. Similarly both Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967), and Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), dealt with situations where indigent defendants had appealed and the state employed procedures whereby, to the state's knowledge, they were treated less favorably than defendants represented by retained counsel. The familiar observation in Carnley v. Cochran, 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed.2d 70 (1962), that "where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request," must be read in the context of a defendant on trial, whose need for counsel was apparent to the state judge, whereas here New York had no way of knowing that, as Smith claims, he would have liked to appeal if he had known he could. The statement in Norvell v. Illinois, 373 U.S. 420, 422, 83 S.Ct. 1366, 1368, 10 L.Ed.2d 456 (1963),

> "If it appeared that the lawyer who represented petitioner at the trial refused to represent him on the appeal and petitioner's indigency prevented him from retaining another, we would have a different case."

must also be read in context. The actual holding was that a state was justified in denying Griffin v. Illinois retroactive application where the free transcript once wrongfully denied could not even be furnished due to the intervening death of the court reporter and defendant had not appealed despite the availability of counsel for this purpose. The quoted language merely hints, without deciding, that *Griffin* will be given total retroactive application in a case where the requirements of Douglas v. California, *supra,* also a retroactive decision, were violated in addition.

Painting with a broad brush, the majority opinion does not pause to identify what New York did here which the Constitution forbade. My brother Medina rightly does not assert that because Smith's attorney was licensed by New York and, in the oft used phrase, was an "officer of the court," his alleged omission to advise Smith of the availability of *in forma pauperis* is attributable to the State. The contrary is indicated by Mulligan v. Schlachter, 389 F. 2d 231 (6 Cir. 1968) (assigned counsel), and the many other cases under the Civil Rights Act cited in 42 U.S.C.A. § 1983, n. 13. Rightly also my brother does not assert that holding a defendant in custody is itself the unconstitutional state action necessary to sustain federal habeas corpus. Such a principle would be far too expansive; it would mean, for example, that any claim of a material false statement by a witness would be a ground for federal collateral attack although the state had no responsibility for it or knowledge of it. The state action that gives rise to a claim in federal habeas corpus must be action by the state that constitutes a wrong, not its mere holding a defendant who claims to have been wronged by someone for whose conduct the state is not chargeable. The inarticulate premise of the majority thus must be that New York was bound not merely to afford known indigents the same rights of appeal as non-indigents but to make sure that an apparent non-indigent was informed of what would be available if he were indigent.

I would not deny that a state's duty may sometimes be so compelling that continued inaction can fairly be regarded as violating the Fourteenth Amendment. But I see no justification for holding that in 1959 New York should have perceived a constitutional duty on its part to make certain that a convicted defendant whom it had no reason to believe to be indigent should be advised what New York would do for him if he were.

The rapid doctrinal development in this area began with the *Douglas* decision in 1963. While that decision is retroactive on the situation there presented, that does

not mean that all its emanations should have been realized not merely then but four years earlier. I find it especially hard to condemn New York for inaction in 1959, when it was not until 1966 that the Supreme Court brought its own rule governing federal criminal appeals in line with what the majority holds to have been constitutionally required all along.

Today's ruling may not be of great practical importance with respect to New York prisoners in light of Judge Keating's sweeping language in People v. Montgomery, 24 N.Y.2d 130, 299 N.Y.S. 2d 156, 247 N.E.2d 130 (1969), which the majority applauds. But the actual decision in that case, by a sharply divided court, related to assigned counsel, as to whom it would be arguable that the unfortunate rule of People v. Kling, 19 A.D.2d 750, 242 N.Y.S.2d 977 (2d Dept. 1963), aff'd, 14 N.Y.2d 571, 248 N.Y.S. 2d 661, 198 N.E.2d 46 (1964) (4–3 vote without opinion), *cert. denied*, 381 U.S. 920, 85 S.Ct. 1539, 14 L.Ed.2d 440 (1965), whereby the duties of assigned counsel ended on sentence, itself constituted state action denying equal protection. Cf. American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855 (1941). We must also consider the effect of our decision on the two other states in the circuit and on federal convictions prior to the 1966 amendment of F.R.Cr.P. 32(a). In many instances the desired appeal cannot now be had because of unavailability of a transcript. Both in such cases and in those where the appellate court detects an error, only in rare instances relating to the basic issue of innocence, a new trial would confront "the familiar difficulties of proof long after the event." Retroactive holdings like the present are of particular benefit to prisoners who have committed the most serious crimes and have received correspondingly long sentences.

I therefore respectfully dissent.