James P. **RONDINONE**, Appellant,

v.

Frederick G. **REINCKE**, Warden, Appellee.

No. 356, Docket 34020.

United States Court of Appeals Second Circuit.

Argued Dec. 10, 1969.

Decided Jan. 22, 1970.

Certiorari Denied April 20, 1970. See 90 S.Ct. 1401.

Igor I. Sikorsky, Jr., Hartford, Conn., for appellant.

George D. Stoughton, Chief Asst. State's Atty., State of Connecticut (John D. LaBelle, State's Atty.), for appellee.

Before MOORE, KAUFMAN, Circuit Judges, and RYAN, District Judge.*

RYAN, District Judge:

Appellant was convicted by jury verdict, returned on May 29, 1947 in the

* Of the Southern District of New York, sitting by designation.

Connecticut Superior Court, on two counts of attempted robbery with violence. He was sentenced to an effective term of not less than seven years nor more than twenty-five years. Now, more than twenty years after his conviction, he seeks relief on the claim that he was entitled to a severance of his trial from that of his codefendants because evidence against them, which was not binding upon appellant and was prejudicial to him, was received at the trial. Because the Court reporter at the 1947 trial is now deceased and the transcript is not now available, appellant argues that he has been deprived of his Constitutional right to an appeal.

Judge T. Emmet Clarie held a hearing on the merits of the claims asserted and, in a well-reasoned opinion, denied relief. Were it not for this Court's recent decision in United States ex rel. Smith v. McMann, Warden, 417 F.2d 648, decided October 10, 1969, we would affirm on the opinion below. However, we believe that decision requires further discussion of the merits of this appeal.

At trial, appellant, by his own statement, was "represented by two distinguished counsel." At the hearing below, it was stipulated that these attorneys had no present recollection of the facts applicable to the issues here. However, it is not disputed that appellant was paroled in February, 1953, and returned in July, 1954 as a parole violator. A writ of habeas corpus was filed in the Superior Court in 1954 raising the identical issue of appellant's right to a separate trial. It does not appear that appellant then sought a trial transcript. The writ was denied.

Appellant was again paroled in 1956 and returned again as a violator in June, 1960. A second writ of habeas corpus was filed in the Superior Court in 1961 raising, again, the issue of appellant's right to a separate trial and this time a transcript was sought, but denied. This petition was likewise denied and appellant unsuccessfully sought to appeal.

Appellant was paroled once more in March, 1963 and returned to prison in March, 1967 as a parole violator. During the time appellant was free from jail, the District Court found that he held well paying jobs. Yet he did not then seek to procure a trial transcript, nor to attack the 1947 conviction. It was not until December, 1967 that appellant, in connection with a new habeas corpus proceeding raising the identical issue of a trial severance, sought a trial transcript, arguing for the first time that he was entitled to a transcript in order to prosecute an appeal, only to find that it was no longer available due to the death of the court reporter.

■ Judge Clarie reviewed all the relevant facts and considered appellant's testimony. He found it to be "inherently improbable," "unreliable and unpersuasive," and he wrote that "considering the totality of the evidence, including petitioner's testimony as a witness, its lack of corroboration by documentary evidence in the state court file, the lapse of time and overall circumstances, the Court finds * * * that petitioner has failed to carry his burden of proof." With this conclusion, we agree.

Appellant argues that he did not waive his right to appeal from his conviction and that it should have been afforded to him within the ruling of Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). That case held that an indigent defendant was entitled to the assistance of assigned counsel on appeal to the same extent as an affluent defendant, and that the State Court could not deny this assistance by ruling in advance that the appeal lacked merit. Here, however, appellant never sought the assignment of counsel. He was represented at trial by two privately retained attorneys. At the time of sentence, appellant was advised by the trial Judge of his right to appeal. Judge Clarie found as a fact that appellant "took no steps to perfect an appeal from his 1947 conviction for over 20 years," and that appellant's "in-

digency and desire to appeal were in no way manifest."

In United States ex rel. Smith v. McMann, Warden, 417 F.2d 648 (decided en banc October 10, 1969), this Court decided that Douglas v. California, *supra*, required that the State Court warn a convicted person of his "right to appeal and his right to prosecute his appeal without expense to him by counsel appointed by the state, if he is indigent." Judge Clarie found that, not only was appellant advised of his right of appeal, but also that appellant "has not alleged that he was ignorant of these rights."

█ The proceedings brought by appellant in the years subsequent to his conviction show a complete awareness of his rights. The death of the Court reporter after a lapse of 20 years from his trial should not be used as a fortuitous event to eradicate this conviction under circumstances in which it is clear that a re-trial will be impossible. Having discounted appellant's testimony for unreliability, the District Court found no proof to upset the logical conclusion, which the State was entitled to rely on, that a defendant with privately retained, able counsel, who was advised of his right to appeal and continued to have the assistance of counsel, did not need the additional rights available to an indigent defendant.

█ The Supreme Court in *Douglas* merely ruled that a poor man was entitled to equal protection by counsel on appeal as a rich man. Neither the rich man nor the poor man can obtain a trial transcript 20 years after conviction when the Court reporter is dead. Neither is denied equal protection of the law in these circumstances. The finding below that the right to appeal was waived by appellant is supported by the record. Since there was no denial of the right to appeal his 1947 conviction at the time, the lack of a transcript 20 years later does not become a denial of any Constitutional right.

Affirmed.

IRVING R. KAUFMAN, Circuit Judge (dissenting):

While I do not quarrel with the conclusions of the majority—that Rondinone was represented by competent counsel at his 1947 trial, that he was told he could appeal the conviction which followed that trial, and that he made no attempt to appeal—these conclusions do not dispose of Rondinone's troublesome claim, that since he was denied an appeal in 1947 because of his indigence he is entitled to take that appeal now.

Rondinone claims that he could not afford to retain an attorney for an appeal when his trial ended and that he had no knowledge of any right to appeal with the assistance of counsel appointed by the state at no expense to himself. Everyone agrees, moreover, that the able trial judge did not advise Rondinone of the existence of any such right. All of these events, of course, antedated Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), where the Supreme Court instructed that indigents must be provided with counsel on appeal so that they may enjoy the same rights to appeal—and on the same terms—as non-indigents. This decision would not have presented a stumbling block to the result reached by the majority were it not for the further declaration in Smith v. Crouse, 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (1954), that *Douglas* is retroactive. Thus, as appealing as it might be to follow the habits of the ostrich, we must come face to face with the glaring realization that, although we may believe Rondinone had his full day in the courts, and we have a psychological repugnance towards seeing old criminal cases in a continuous state of litigation, *Douglas*, the Supreme Court has informed us, is applicable to Rondinone's case.

Moreover, Rondinone's case comes before us so soon after our exegesis of *Douglas* in United States ex rel. Smith v. McMann, 417 F.2d 648 (2d Cir. 1969) where the petitioner was convicted in 1959 following a trial at which he was

represented by retained counsel. Smith argued that his failure to appeal this conviction stemmed from his indigency at the conclusion of his trial and his failure to appreciate that he had a right to appeal with counsel provided at the expense of the state. "The only practical, logical and fair interpretation to be given to Douglas v. California," we said, "is that it imposes upon the state a duty to warn every person convicted of crime of his right to appeal and his right to prosecute his appeal without expense to him by counsel appointed by the state if he is indigent." We continued, "The right to appeal at the expense of the state is mere illusion if the convicted indigent defendant does not know such a right exists. And the one way to make sure that he does know is to tell him so." Id. at 654.

We concluded, therefore, that since the state trial court had not informed Smith of his right to appeal with counsel provided by the state, he should be allowed an appeal out of time if, after a hearing to be held in the district court, it appeared that he had not learned of this right by other means. In view of this recent pronouncement by our court en banc in Smith, I cannot comprehend our different treatment of Rondinone's case, unless it is based on our common dislike of raking over the bones of cases which should have gone to a decent burial long ago. Much as I share this dislike, I would honor our decision in Smith and remand for a hearing to determine whether Rondinone was indigent at the conclusion of his trial and whether he knew of his right to appeal with counsel provided by the state. If he can establish both his indigence and his ignorance of his rights at that time, I would grant him the appeal he could not afford in 1947.

My brothers have reached a conclusion which appears to have skirted Douglas, Smith v. Crouse, and the recent Smith —but to ignore them will not make them disappear. This is not to say that I favor releasing Rondinone. To this I am opposed. I cannot escape the feeling that the motivation for their conclusion was our common concern that to grant Rondinone an appeal at this time would, because of the peculiar circumstances present, result in the release from custody of a convicted criminal and three-time parole violator, without his ever having shown any error on the part of the court which convicted him. This interesting theory has been espoused because the court reporter at Rondinone's trial is dead, and the notes he took, illegible. Accordingly, a trial transcript is unavailable. Since many of the witnesses at the 1947 trial have very likely died or disappeared, and the memories of those who remain have undoubtedly faded, it is reasonable to regard a new trial as impractical. If the majority is correct in its assumptions that neither an appeal nor a new trial is possible, it is argued, granting Rondinone an appeal will undeniably ensure his release. I differ with my brothers, however, not only as to the disposition of this appeal but also as to the consequences of the disposition I advocate. In my view, all Rondinone is entitled to at this time is an appeal with the assistance of counsel. He cannot have his cake and eat it too by first demanding an appeal, then complaining that the absence of a transcript of a 1947 trial must inevitably lead to a determination that any appeal would be ineffective. My reason for adhering to this view is grounded on the fact that the Supreme Court's decision that an indigent must be provided with a transcript for his appeal at the expense of the state was based on the equal protection clause—that a poor man be treated no worse than a rich man in a criminal proceeding. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). If Rondinone appeals from this conviction at this time, he will be denied a transcript not by reason of his indigency but by death and the passage of time, factors which recognize no distinction between rich and poor. Although the Supreme Court has noted the problem which arises when a transcript becomes unavailable through no fault of the

state, it has not yet found it necessary to resolve this dilemma. See Norvell v. Illinois, 373 U.S. 420, 422–423, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963); id. at 424, 425, 83 S.Ct. 1366 (Harlan J., concurring in the result). Moreover, in this instance, Rondinone would not seem likely to be seriously prejudiced by being required to prosecute his appeal without a transcript. Throughout the series of proceedings he has instituted in the state and federal courts over the past quarter century, he has urged only a single contention—that the trial court erred in refusing to grant his *pre-trial* motion for a severance. The merits of this claim turn on the law of Connecticut, not on what may be buried in the undecipherable transcript of Rondinone's trial.