**Norman PERKINS, Petitioner,**

**v.**

**Frederick E. ADAMS, Warden, Connecticut State Prison, Respondent.**
**Civ. A. No. 13934.**

United States District Court,
D. Connecticut.

Feb. 1, 1971.

Paul S. Sherbacow, Satter, Fleischmann & Sherbacow, Hartford, Conn., for petitioner.

George D. Stoughton, Chief Asst. State's Atty., Hartford, Conn., for respondent.

**RULING ON PETITION FOR A WRIT OF HABEAS CORPUS**

CLARIE, District Judge.

The Supreme Court observed in Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) that to deny an indigent the right to appointed counsel for his first appeal would draw an unconstitutional line between rich and poor defendants. This habeas corpus petition presents questions involving the implementation of the *Douglas* mandate. The petitioner maintains that he has been denied his constitutional rights to appeal and to appeal with the assistance of court-appointed counsel as an indigent. The Court finds that the writ should be granted to allow an appeal out of time.

The petitioner was found guilty of manslaughter in violation of Conn.Gen. Stat. § 53–13 (1958) on January 15, 1969, after a jury trial in the Superior Court, Hartford County. At this trial he was represented by retained counsel. After the conviction but before the sentencing, the evidence discloses that the petitioner and his trial counsel discussed an appeal. In this discussion, his counsel advised him that an appeal would be unwarranted and that if he decided to appeal he would not represent him. The petitioner apparently agreed with his attorney at the time of his conviction not to take an appeal.

On January 31, 1969, the petitioner appeared with his counsel for sentencing. The presiding judge had before him at the time a pre-sentence report prepared by the Probation Office indicating that the petitioner owned two automobiles, some savings bonds, and an interest in a fairly large farm in Georgia; and that both he and his wife were employed. After the motion to set aside the guilty verdict had been denied, the Court sentenced the petitioner to serve

not less than five nor more than ten years in the Connecticut State Prison. Counsel at that time engaged in an extended colloquy with the Court, as to the amount of an appellate bond. Counsel urged the Court that "(o)n appeal * * * the bond remain the same. Anything other than that he will not be able to get up." The Court responded, "(t)he fact he wishes to take an appeal has nothing to do with it. * * * It is a serious sentence * * *." Petitioner's counsel again urged that the Court set a lower bond, as the $10,000 bond ordered could not be met. The Court responded that the petitioner was likely to flee and that the bond would have to remain as set, although the Court "(did) not want to discourage him from taking the appeal." This persistent effort on the part of counsel asking a modest appellate bond had occurred, even though petitioner had previously indicated that he did not want to take an appeal. It is undisputed that during the sentencing process the trial judge did not mention to the petitioner that he had the right to appeal and that, if indigent, counsel would be provided for him at State expense.

Petitioner did nothing further until February 2, 1970, more than one year later, when a "Motion to Vacate Judgment and Sentence" was filed in the State courts. Treating the motion as a habeas corpus petition, a hearing was held and the writ was denied by the State Superior Court on June 9, 1970. Subsequently, on June 24, 1970, petitioner filed a *pro se* application for a writ of habeas corpus in this Court. An order to show cause was entered, and the State's Attorney filed his return. This Court reviewed the papers and dismissed the writ without a hearing on July 31, 1970. The petitioner then filed a Notice of Appeal and an Application for Certificate of Probable Cause to appeal in forma pauperis.

After reviewing the file, the Court noted that it had in its previous ruling accepted the findings of the State court relative to the petitioner having adequate funds with which to appeal his conviction. This finding was made without benefit of the Probation Officer's report and in the face of the petitioner's allegation that he was actually indigent at the time.

On September 28, 1970, this Court's judgment of July 31, 1970, was vacated, counsel was appointed to represent the petitioner and a hearing on the merits was ordered. On December 28, and 29, 1970, a hearing was conducted at which evidence was presented as to the indigency of the petitioner at the time of the sentencing. The Court also considered the circumstances relating to the attorney-client relationship between petitioner and his retained counsel both at the time of sentencing and during the appellate period.

As previously stated, Douglas v. California, first established the constitutional right of an indigent defendant to have court-appointed counsel for his first appellate review through the courts. *See also*, State v. Hudson, 154 Conn. 631, 228 A.2d 132 (1967):

> "(T)he duty of the state to provide the same right of initial appeal to an indigent defendant as is available to a wealthy one has been established beyond question * * *." (at 635, 228 A.2d at 134).

As is true in most cases, it is the implementation of these abstract principles that results in the present controversy.

In the Fourth Circuit the rule has developed that the indigent must inform the court of his desire to appeal. *See, e. g.*, Cox v. Peyton, 291 F.Supp. 879 (W. D.Va.1968):

> "There is no constitutional obligation to inform an indigent of the right to appeal unless he expresses some desire to seek an appeal. * * * Petitioner must take some positive action on his own behalf. The state cannot suppress an indigent's effort to appeal, but it need not solicit appeals." (at 881).

The Fifth Circuit has adopted a similar rule for defendants that appear be-

fore the trial court with retained counsel, and not appointed counsel. See, Pate v. Holman, 341 F.2d 764, 765 (5th Cir. 1965). The holding has been summarized as follows:

"The rule is now established in this circuit that there are two prerequisites in showing denial of counsel for the purposes of appeal. First, it must be known to the court that the criminal defendant is indigent. Second, it must be known to the court that the defendant wishes to appeal." Beto v. Martin, 396 F.2d 432, 434 (5th Cir. 1968).

Recently this view was also adopted in the Third Circuit in United States ex rel. O'Brien v. Maroney, 423 F.2d 865 (3rd Cir. 1970) "especially as it relates to convictions which had become final long prior to the *Douglas* decision." (at 872).

A contrary view has been adopted in the Second Circuit. In United States ex rel. Smith v. McMann, 417 F.2d 648 (2d Cir. 1969) (in banc) the majority announced:

"We think the only practical, logical and fair interpretation to be given to Douglas v. California is that it imposes upon the state a duty to warn every person convicted of crime of his right to appeal and his right to prosecute his appeal without expense to him by counsel appointed by the state, if he is indigent. The right to appeal at the expense of the state is mere illusion if the convicted indigent defendant does not know such a right exists. And the one way to make sure that he does know is to tell him so." (at 654).

The critical findings needed for the granting of relief in this Circuit are: (1) "was (the petitioner) indigent at the time he was sentenced" and (2) "was (the petitioner) informed or did he know prior to the expiration of his time to appeal that he could appeal without cost to himself and with counsel appointed by the state?" (at 655). *See also,* United States ex rel. Witt v. LaVallee, 424 F.2d 421 (2d Cir. 1970).

Contrary to the State's contentions, the holding in *Smith* does not turn on the appearance of the defendant to the trial judge to carry on an appeal with retained counsel and adequate resources. Where the court has a duty to warn only those defendants that are represented by appointed counsel as in the Third and Fifth Circuits, the contentions of the State might well have merit. *Cf.* Justice Harlan concurring and dissenting in Rodriquez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969). But here in the Second Circuit, the rule has been specifically designed to apply to all cases, and it does not matter that the trial judge was misled by the appearance of retained counsel or inaccuracies in the pre-sentence report, even if they were of the defendant's making. To paraphrase the Court in *Smith,* the prisoner's plight is the same whether the trial court is aware of his indigent status or not.

Proceeding to apply the requisites of *Smith* to the case at bar, there is no claim or evidence here that petitioner was advised by the sentencing court of his right to appeal *in forma pauperis.* The record is silent on this point, as well it might be, seeing that the sentencing took place before *Smith* was decided. Nor did the defendant's trial attorney inform him of these rights. Discussions took place on the subject of appeal after conviction and again after sentencing. But at no time was the petitioner told of these constitutional guarantees. When asked at the court hearing, if he had told the petitioner of the latter's right to court-appointed appellate counsel at Government expense, his trial counsel responded: "I don't think I did."

Petitioner himself has consistently maintained that he was unaware that he "could file an appeal of my case at the cost of the State." (State habeas corpus trans. at 13). This petitioner is not a recidivist, well-experienced with the workings of the courts, as in *Witt, supra;* nor has he taken numerous prior appeals as in O'Brien, discussed above. The first finding of the *Smith* case,

namely that the petitioner was not informed or with knowledge before the expiration of his time to appeal of the *Douglas* rights, has been amply demonstrated in this instance.

The Court finds the petitioner was indigent on the date of his sentencing, January 31, 1969. The pre-sentence report in this case, relied upon by the State to show his financial status, was developed with the petitioner's help and contains numerous errors relating to the issue of indigency. The automobiles allegedly worth over $3500 were shown to have an actual retail combined value of only a few hundred dollars. The savings bonds referred to as assets were actually held in trust for petitioner's son. In any event they totalled only $200 face value with a cash surrender value approximating $150 as of January, 1969.

The petitioner never had a legal ownership in the Georgia property. While the probation officer testified that the petitioner had told him he had an interest in the farm, the petitioner explained that his claim was simply based upon the fact that he had worked on the farmland during his youth with his father and brother. The deeds of the land confirmed that he held no legal title. Furthermore, contrary to the probation report, the petitioner's wife had not worked since September, 1968; she was at home caring for three minor children, and there existed several outstanding family debts. The second requisite required by *Smith,* that the petitioner be indigent at the time of sentencing, has been met.

The case of Rondinone v. Reincke, 424 F.2d 1307 (2d Cir. 1970) is inapposite. In that case the petitioner, a three-time parole violator, relied upon *Smith* for his claim that he was entitled to a trial transcript in order to prosecute his appeal. That case was unique, in that the transcript sought was unavailable due to the death of the court reporter. *Cf.* Norvell v. Illinois, 373 U.S. 420, 422, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963).

In *Rondinone,* the Court found the petitioner's testimony to be "inherently improbable," "unreliable and unpersuasive." That is not the situation in the case at bar, where the petitioner's testimony is reconcilable with the objective facts and documentary evidence. Even more significant is the fact that in Rondinone's case the petitioner was a veteran of the post-conviction process and did not allege that he was ignorant of his appellate rights. Petitioner Perkins, as indicated above, did not have this detailed knowledge or experience.

The Court finds that this petitioner was not given timely appraisal of his appellate rights as an indigent at the time of sentencing; that his constitutional rights were prejudiced thereby and he is now entitled to relief. A writ of habeas corpus will issue, unless within sixty (60) days, the State of Connecticut permits the petitioner to file an appeal from his conviction *in forma pauperis* and to proceed with assigned counsel. So ordered.