Julius C. MICHAELSON, Attorney General of the State of Rhode Island and Providence Plantations, ex rel. Rabbi Theodore LEWIS, Rabbi Ely Katz, Saul J. Schweber, Dale G. Blumen, Bella G. Werner, citizens and registered voters of the City of Newport, Rhode Island, on behalf of themselves and other persons similarly situated,

v.

Allan BOOTH, Mary S. Shea, and Teresa Trifero, Members of the Newport Canvassing Authority, and Robert F. Burns, Secretary of State of the State of Rhode Island and Providence Plantations.

Civ. A. No. 77–0536.

United States District Court,
D. Rhode Island.

Sept. 2, 1977.

Allen P. Rubine, Providence, R. I., for plaintiffs.

James S. O'Brien, Jr., Newport, R. I., Maurice W. Hendel, Pawtucket, R. I., for defendants.

## OPINION

FRANCIS J. BOYLE, District Judge.

This is an action brought by the Attorney General, State of Rhode Island, as representative of the public to vindicate a public wrong, on relation of five (5) citizens and electors of the City of Newport, State of Rhode Island, in accord with the provisions of 42 U.S.C. Sec. 1983, who seeks declaratory and injunctive relief in order to postpone a general municipal election scheduled to be held on September 13, 1977, in the City of Newport. Defendants are the members of the Canvassing Authority of the City of Newport and the Secretary of State of the State of Rhode Island, officials charged with the conduct of the election. Following the filing of answers, by agreement, the parties submitted this controversy for determination on the merits. The Complaint was filed on August 25, 1977, and was heard by the Court on August 30, 1977. Notice of the hearing was given to all candidates qualified for the election, none of whom appeared. The action is brought on behalf of the named relators and all persons similarly situated, to wit, citizens and registered voters of the City of Newport who are members of the Jewish faith. The Court finds and certifies the existence of a Rule 23(b)(2) class, consisting of citizens and registered voters of the City of Newport who are members of the Jewish

faith, and determines that this action may be maintained as a class action. *Walgren v. Howes*, 482 F.2d 95, 98 (1st Cir. 1973); Fed. R.Civ.P. (23).

Plaintiffs contend that they are denied equal protection of the laws guaranteed by the Fourteenth Amendment to the *United States Constitution* by reason of application of the provisions of *Home Rule Charter of the City of Newport*, ch. 111, § 3–1 et seq. validated by Chapter 3234, Public Laws of Rhode Island (1953), which establishes the first Tuesday after the second Monday of the month of September in odd numbered years as the date for general municipal elections. Thus, in the year 1977, the date for the general municipal election is September 13, which is also the first day of the Jewish religious observance known as Rosh Hashanah, the beginning of the Jewish New Year and a solemn religious holiday. Plaintiffs argue that they, and the members of the class whom they represent, are required by their religious customs, practice and beliefs to refrain from performing "secular" activities, including voting on Rosh Hashanah. Therefore, in order to exercise their right of franchise, they will be required to violate their religious beliefs. Defendants contend that there is a compelling state interest in holding the election on the date established by the Charter provision and statute, in that the regularity of the statutory election process must be observed in order to avoid later collateral attacks upon the election result.

Although Sec. 17–15–2, General Laws of Rhode Island, 1956, as amended, provides for the postponement of primary elections which occur on religious holidays, the Rhode Island Supreme Court in a written Opinion dated August 11, 1977, acting in accord with the provisions of Sec. 2, Article XII, Amendments to the Constitution of the State of Rhode Island advised that Sec. 17–15–2, applies solely to primary elections and does not authorize the rescheduling of the September 13, 1977, City of Newport regular municipal election because it falls on a religious holiday. There is, therefore, no statutory provision which authorizes de-

fendants to postpone the election, and, in accord with their duty, they argue that they are required to carry out the statutory and charter mandate to hold the election on the designated date. Counsel for the Defendant, Secretary of State, whose learning in the matter of legislative revision of the election laws through many years of experience is unquestioned, stated that the failure to provide for postponement of general elections which occur on religious holidays was inadvertent. It is, nonetheless, actual.

## THE FACTS

The State of Rhode Island from prior to and at the time of its founding has had a vital concern for both religious and political liberty. As a colony, it was settled by colonists who went there because of governmental tampering with religious conviction. Among the colony's earliest leaders was Roger Williams, who settled in Rhode Island in 1636, and who advocated religious freedom as a right of the people rather than as mere religious tolerance, which could be withdrawn by the government at its whim. This principle finds literal expression in the R.I.Const. art. I, § 3, adopted in 1842, which states that "a principal object of our venerable ancestors, in their migration to this country and their settlement of this state, was, as they expressed it, to hold forth a lively experiment, that a flourishing civil state may stand and be best maintained with full liberty in religious concernments . . ."

Following the American Revolution, George Washington wrote a letter to the Jews of Newport, which is a ringing declaration of the intent of this then new democracy, and which, in part, stated:

" . . . For happily the Government of the United States which gives to bigotry no sanction, to persecution no assistance, requires only that they who live under its protection should demean themselves as good citizens in giving it on all occasions its effectual support . . . "

The Jews of Newport are involved in civic affairs, as public officers and as members of boards and commissions and have certainly done their part to give their government "effectual support."

There are presently three (3) Jewish Synagogues located in the City of Newport: Touro Synagogue, Temple Shalom and Congregation Avath Achim. Touro Synagogue has in its membership 80–85 families, who reside in the City of Newport. Temple Shalom has in its membership 80 families, and Congregation Avath Achim has in its membership about 40 families. At least 272 persons, who are members of families considered to be members of the three (3) synagogues, are qualified electors of the City of Newport. It is clear that a substantial number of electors of the City of Newport are adherents of the Jewish faith, and that the number of such electors is sufficient to effect election results in the City depending on whether or not they vote.[1]

Rosh Hashanah is the Jewish New Year celebration. It is a solemn festival when Jews judge themselves and pray for forgiveness and long life. It is a day of remembrance. It is a two-day festival and is one of the holiest days in the Jewish calendar. The date of its occurrence is established in the biblical Book of Leviticus, which states that on that day: "Ye shall do no manner of servile work . . ." It is not permissible for Jews to vote on Rosh Hashanah. By the Mishnah, part of the Jewish Talmud, Jews are forbidden to write, an action which they would be required to perform if they were to affix their signatures to voter applications required by law at the polls. This action would violate a negative commandment and, it was testified, would be a "desecration".

Postponement of the date of the election to September 15, 1977 would cause no real difficulty to the City. Although all candidates were notified of this action, none have complained either to the Defendants, Newport Canvassing Authority, or to this

---

1. This is so in spite of the distinction suggested by counsel of the difference in degree and manner of observance among Orthodox, Conservative and Reform Congregations.

Court. The Defendant, Secretary of State, would be required to print some new stick-on labels but the expense would be negligible. Neither absentee nor shut-in voters would be prejudiced, and, indeed, new voters who registered to vote after the statutory deadline could easily be notified that they had become qualified to vote. The Clerk of the Canvassing Authority testified that a postponement of two (2) days would "just mean moving everything up two days." Counsel for the Secretary of State testified that he could see no problem arising from a postponement. There is no evidence of any hardship which the community, the candidates, or the electors might suffer if the election were postponed for a period of two (2) days. The incumbent City Council of the City of Newport by Resolution No. 122–77 dated July 27, 1977, in part, stated:

> "WHEREAS, the City Council wishes to assure all the citizens of Newport the opportunity to fully participate in local government; and
>
> WHEREAS, the City Council would like to reschedule the date of the upcoming election so that it will not conflict with this religious observance [the Jewish New Year]."

## THE ISSUE

■ The Defendants contend in effect that a postponement of the scheduled election could cast a cloud over the finality of the process and, this constitutes the compelling state interest which would require the relators to choose either to observe the tenets of their religion and not vote, or to violate the tenets of their religion and vote. Further, they contend that the effect of the exclusion is indirect, and, does not constitute a direct intrusion on their right to free exercise of religion since they may observe their religious beliefs and are not compelled to vote.[2]

The exclusion of relators is not specifically stated but arises de facto. It is clear that the omission is unintentional, and, there is not the slightest suggestion that it is the result of bias or prejudice. As counsel for the Defendant Secretary of State stated in argument, it was the result of an oversight on the part of the draftsmen of election legislation. However, whether the cause of the forced choice which relators must make is accidental or deliberate, it is no less real.

■ The relators and those who are members of the same class admittedly have both the right to be free to conform the conduct of their lives to the laws of their religion as well as the right to vote. Neither right may be essentially limited, and, both rights are about as absolute as any right can be. The issue, then, is whether the provisions of Newport's Home Rule Charter, as validated by state law, can be enforced against relators and all those similarly situated with the effect that they must forego one or the other of these basic rights. The answer is no.

## THE LAW

■ It is not necessary that the consequences visited upon the Plaintiff class were intended if its members are deprived of a constitutional right as a natural consequence. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

The test to be applied is not entirely clear, but, whatever the test, the result is clear. In *Walgren v. Howes,* 482 F.2d 95 (1st Cir. 1973), a controversy involving burdens imposed on the franchise, the court declined to apply the so-called compelling interest test. *Id.* at 99. The court stated, in part:

> "We do not view the compelling interest test as applicable here. There being no allegation that the town has improperly denied absentee ballots to residents re-

---

2. Defendant, Canvassing Authority, additionally contends that Plaintiffs are guilty of laches, although they have not pleaded it as a defense. Apart from the lack of any factual basis for this argument, the Resolution of the City Council adopted about a month prior to the filing of this action states that the conflict "has recently come to the City Council's attention . . . ." Plaintiffs have no higher duty. This argument is without merit.

questing them, it has not 'totally denied the electoral franchise to a particular class of residents [such that] there [might be] no way in which the members of that class could [make] themselves eligible to vote.'" Citing *Rosario v. Rockefeller,* 410 U.S. 752, 93 S.Ct. 1245, 1249, 36 L.Ed.2d 1 (1973).

The Circuit Court, in a footnote, suggests that the degree of the burden placed by law upon the exercise of the franchise determines the test to be applied, i. e., the heavier the burden on the exercise of the franchise, the stiffer the test to be applied to determine if the statute passes constitutional muster. In *Walgren v. Howes, supra,* the court, applying the test of *Rosario, supra,* suggested three inquiries:

(1) is the limitation so severe as itself to constitute an unconstitutionally onerous burden;

(2) is the limitation unconnected to any important state goal; and

(3) is there no less drastic means to effectuate the state goal.

■ This action involves, and the Court holds: (1) that the effect of the operation of the Charter provision does constitute an unconstitutionally onerous burden; (2) that there is no basis to suggest that the date of election, now set for September 13, 1977, has any rational or necessary connection with any important state or municipal goal; and (3) that the goals of both the State and the City can be realized by less drastic curtailment of the rights of relators.

Another, more strict test is established in *Dunn v. Blumstein,* 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1971). The Supreme Court herein said:

" . . . First, then, we must determine what standard of review is appropriate. In the present case, whether we look to the benefit withheld by the classification (the opportunity to vote) or the basis for the classification (recent interstate travel) we conclude that the State must show a substantial and compelling reason for imposing durational residence requirements . . . "

" . . . We concluded that if a challenged statute grants the right to vote to some citizens and denies the franchise to others, 'the Court must determine whether the exclusions are *necessary* to promote a *compelling* state interest.'" *Id.* at 337, 92 S.Ct. at 1000.

*See also,* 88 Harv.L.Rev. 1111, 1118 (1975) and cases cited therein.

Only the " 'gravest abuses, endangering paramount interests, give occasion for permissible limitation' ". *Sherbert v. Verner,* 374 U.S. 398, 406, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963).

The Court holds that there is no compelling state or municipal interest which requires that the municipal election be held on September 13, 1977.

There is nothing to suggest that holding a municipal election on September 13, 1977 is essential to the functioning of municipal government, or that a two-day postponement would cause any real mischief whatsoever. In fact, it would provide defendants with two additional days to prepare for the election. The very reason advanced by defendants, fear that a change in the date of the election may cause future complications from attacks by others upon the validity of the change, is the soundest reason why this Court should act here and now. This Court has the right to change the election date. *Alabama v. United States,* 304 F.2d 583 (5th Cir. 1962); *Hamer v. Campbell,* 358 F.2d 215 (5th Cir. 1966); *Holmes v. Leadbetter,* 294 F.Supp. 991 (D.C.Mich.1968); *Otey v. Common Council of City of Milwaukee,* 281 F.Supp. 264 (D.C.Wis.1968) and cases cited. If the date is not changed to accommodate the relators' religious beliefs, and, since they constitute a substantial number of voters, whose vote could affect the outcome of the election, they would be free following the election to attack the validity of any and all actions of elected officials in the City of Newport. This is an intolerable burden which this Court cannot impose upon municipal government. The question ought to be determined once and for all, here and now, and it is the intention of this Court to do so.

The fears of the Defendants pale in light of the havoc to be wreaked upon the community if the election, once held, were later to be held to be invalid. Such would require yet another election and raise questions concerning the validity of all acts of all officials apparently elected at the first election.

■ Defendants mistakenly rely upon the contention that application of the Charter and statutory provisions accomplishes only an indirect injury, since Plaintiffs and members of their class may choose either to vote or to practice their religious faith. Moreover, the contention that there is nothing illegal involved in either alternative, is misplaced. The fact is the electors are placed in a position requiring them to forego one or the other of two fundamental rights. The Sunday sales law cases, *Braunfeld v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961), and others, are inapplicable since the electors' choices are mutually exclusive. This action involves a head-on collision between two basic guarantees. Neither can budge an inch to allow the other to be exercised. What the Defendants seem to say is that Plaintiffs have a free choice between two constitutional rights and, that is all they are entitled to. Clearly this position is contrary to a constitution which guarantees a number of rights and which requires no person to choose among them. Each person is entitled to all constitutional rights, and, at the same time. *Williams v. Rhodes*, 393 U.S. 23, 30, 31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Detrimental alternatives are not substitutes for constitutional rights.

■ *Braunfeld v. Brown*, 366 U.S. 599, 607, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961), relied on by Defendants, aptly disputes Defendants' argument in words which apply to the factual situation under consideration:

" . . . If the purpose or effect of a law is to impede the observance of one or all religions or is to discriminate invidiously between religions, the law is constitutionally invalid even though the burden may be characterized as being only indirect." See also, *Sherbert v. Verner*, 374 U.S. 398, 403, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963).

This Court determines that the date of the September 13, 1977 election must be changed to September 15, 1977. This minor adjustment is in accord with the policy adopted by the General Assembly with respect to primary elections falling on primary election dates, a policy inadvertently omitted with respect to general elections. This postponement is also in accord with State policy eloquently expressed in the R.I. Const. art. I, § 3 that:

" . . . every man shall be free to worship God according to the dictates of his own conscience, and to profess and by argument to maintain his opinion in matters of religion; and the same shall in no wise diminish, enlarge, or affect his civil capacity."

And, finally, this adjustment is in accord with the equal protection rights of the Plaintiff class.

In accord with this Opinion, Plaintiffs are directed to prepare and submit a form of judgment as follows:

1. This is a class action certified to exist in accord with Fed.R.Civ.P. 23(b)(2), the class consisting of all citizens and registered voters of the City of Newport who are members of the Jewish faith.

2. The provisions of the *Home Rule Charter* of the City of Newport, as validated by *Chapter 3234*, Public Laws of Rhode Island (1953), are hereby declared to be invalid insofar as they require a general municipal election to be held on September 13, 1977.

3. In accord with the expressed policy of the State of Rhode Island, and, in order to afford to all electors equal protection of the laws in the exercise of their right of freedom of religion and their right of franchise, September 15, 1977 is declared to be the date of the next general municipal election in the City of Newport.

4. Defendants, Newport Canvassing Authority, are directed to meet forthwith and to establish September 15, 1977 as the date of the next succeeding general municipal election in the City of Newport.

5. Defendants, their agents and all persons acting by or through their authority, are permanently restrained and enjoined from conducting the next succeeding general municipal election in the City of Newport, on any date other than September 15, 1977, in accord with rights of the parties as declared in this Judgment.