Lawrence COCHRAN, Individually and on behalf of all others similarly situated, Plaintiff,

v.

Charles ROWE, Individually and as Director of the Illinois Department of Corrections, Robert W. Horn, Individually and as Administrative Chaplain of the Illinois Department of Corrections, Thaddeus Pinkney, Individually and as Warden of Pontiac Correctional Center, Errol Grant, Individually and as Senior Chaplain of Pontiac Correctional Center, and Bealey Reynolds, Individually and as Protestant Chaplain of Pontiac Correctional Center, Defendants.

No. 76 C 4134.

·United States District Court, N. D. Illinois, E. D.

Oct. 20, 1977.

Marc O. Beem, Mandel Legal Aid Clinic, Chicago, Ill., for plaintiff.

Joseph M. Cotugno, Legal Counsel, Ill. Dept. of Corrections, Chicago, Ill., for defendants.

William J. Scott, Atty. Gen., George C. Sorenson, Asst. Atty. Gen., Chicago, Ill., for defendant Rowe.

## MEMORANDUM OPINION

### Motion to Dismiss

MAROVITZ, District Judge.

Plaintiff, Lawrence Cochran, an inmate of Pontiac Correctional Center ("Pontiac") and resident Minister of the World Community of Islam in the West at Pontiac, brings this action pursuant to 42 U.S.C. § 1983 seeking declaratory, injunctive and monetary relief for the alleged unconstitutional restrictions on and discrimination against the practice of his faith at Pontiac. Plaintiff seeks injunctive relief on behalf of himself and all present and future inmates at Pontiac who desire or will desire to participate in Muslim religious services. He seeks $500 damages from each of the named defendants for past alleged constitutional deprivations on his own behalf only.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343. Pending before the Court are the motions of defendants Thaddeus Pinckney, Errol Grant and Bealey Reynolds and the separate motion of Charles Rowe to dismiss plaintiff's first amended complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6), F.R.Civ.P. For the reasons set forth below, defendants' motions are denied.

This action was originally filed by plaintiff *pro se* in November, 1976 against defendants Pinkney, Warden of Pontiac; Grant, Senior Chaplain at Pontiac and Reynolds, Protestant Chaplain at Pontiac. We appointed counsel to represent plaintiff in March, 1977 and on April 29, 1977 a First Amended Complaint was filed which, *inter alia,* added defendants Rowe, Director of the Illinois Department of Corrections and Robert W. Horn, Administrative Chaplain of the Illinois Department of Corrections.

Plaintiff's First Amended Complaint issues from the free exercise clause of the First Amendment and the equal protection clause of the Fourteenth Amendment to the United States Constitution. Plaintiff first claims, *inter alia,* that defendants unreasonably restricted Islamic activities by: (1) reducing the time for such activities from approximately fifteen hours to one hour per week on Sunday for services; (2) suspending all services from February 25, 1977 to April 17, 1977; (3) suspending services on Friday, a holy day for Muslims; (4) requiring that services be held in the prison chapel in the presence of an outside minister, despite the fact that such ministers frequently are unable to get to Pontiac, that such a requirement is in conflict with the beliefs of the World Community of Islam in the West and that the Muslims at Pontiac have successfully conducted their own services without incident for seven years prior to February, 1977 and (5) precluding Muslim inmates who are assigned to the prison honor farm from attending any religious services whatsoever.

In addition, plaintiff claims that defendants have discriminated between Christian and Muslim inmates by: (1) failing to allocate funds for the compensation of outside Muslim ministers; (2) requiring plaintiff to submit proposals for all Islamic religious activities to the Administrative Chaplain; (3) subjecting inmates desiring to attend Islamic services to a more stringent procedure for obtaining religious service cards; (4) failing to supply Islamic religious materials; (5) failing to allocate a proportionate share of the religious budget to Islamic activities and (6) allowing the defacement of the Islamic mosque.

We note by way of a historical perspective that the "hands-off doctrine," the traditional reluctance of courts to review decisions made by prison officials, began to erode upon the assertion of religious rights by Muslim prisoners. In *Sewell v. Pegelow,* 291 F.2d 196 (4th Cir. 1961) and *Pierce v. LaVallee,* 293 F.2d 233 (2d Cir. 1961), federal courts began to recognize that since the freedom to believe is absolute, prison officials do not have the power to interfere with an inmate's belief. Comment, *Prisoners' Rights: Restrictions on Religious Practices,* 42 U.Colo.L.Rev. 387, 389–390 (1970). See generally, Comment, *Black Muslims in Prison,* 62 Columbia L.Rev. 1488 (1962). Today, the view that

"[n]o romantic or sentimental view of constitutional rights or of religion should induce a court to interfere with the necessary disciplinary regime established by the prison officials," *Sostre v. McGinnes*, 334 F.2d 906, 908 (2d Cir. 1964), has been soundly discredited.

■ Furthermore, as plaintiff points out in his original *pro se* memorandum, courts realize the pragmatic benefits of the free exercise of religion in prison. The court in *Barnett v. Rodgers*, 132 U.S.App. D.C. 296, 303, 410 F.2d 995, 1002 (1969), for example, stated:

> Treatment that degrades the inmate, invades his privacy, and frustrates the ability to choose pursuits through which he can manifest himself and gain self-respect erodes the very foundations upon which he can prepare for a socially useful life. Religion in prison subserves the rehabilitative function by providing an area within which the inmate may reclaim his dignity and reassert his individuality. (Footnotes omitted).

This Court has long shared the opinion that rehabilitation is incident to a prisoner's free pursuit of his or her faith. See, Comment, *The Religious Rights of the Incarcerated*, 125 U.Pa.L.Rev. 812, 854 (1977).

## I.

■ On a motion to dismiss, we start with the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In making this determination, all allegations are taken to be true. *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Furthermore, the complaint is to be read, and allegations construed, in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## II.

### A.

Plaintiff's first claim for relief is that defendants have unreasonably and arbitrarily restricted plaintiff and other Muslims in the practice of their religion by severely curtailing Islamic services and activities at Pontiac. First Amended Complaint ¶ 27. He alleges that Islamic activities were prohibited for 8 weeks; when reinstated they were cut to one hour per week; Friday services were prohibited; outside ministers were required and prisoners assigned to the honor farm were totally precluded from attending services. First Amended Complaint ¶¶ 12, 15, 16, 18–20, 23.

■ Plaintiff concedes that the exigencies of prison administration permit some constraints on the religious activities of prisoners which would be illegal if imposed on persons who were not incarcerated. *Walker v. Blackwell*, 411 F.2d 23 (5th Cir. 1969). Defendants argue, however, that plaintiff merely need be afforded reasonable opportunities to exercise religious freedom, citing *Cruz v. Beto, supra*. Evidently, it is defendants' position that one hour of services per week is reasonable as a matter of law. Defendants also urge that it is within the sole discretion of prison authorities to select the time, place and number of people to attend religious services, citing *Cooper v. Pate*, 382 F.2d 518, 522 (7th Cir. 1967).

■ In order to justify an infringement upon a person's First Amendment liberties, the state must show that any restriction serves a compelling state interest. *Sherbert v. Verner*, 374 U.S. 398, 406–09, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). This is particularly true where the state infringes upon one's free exercise of religion. *Wisconsin v. Yoder*, 406 U.S. 205, 214–15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). See *Michaelson v. Booth*, 437 F.Supp. 439 (D.R.I. 1977).

■ The Court is aware that a number of different standards have been applied in the past to determine the constitutionality of restrictions upon prisoners'

First Amendment rights.[1] 125 U.Pa.L.Rev. 812, 837–857. Compare, e. g., *Banks v. Havener*, 234 F.Supp. 27, 30 (E.D.Va.1964) ("clear and present danger") with *Procunier v. Martinez*, 416 U.S. 396, 413–414, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) with *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). We agree with one treatise writer that "of the various approaches to free exercise in prison . . , the compelling interest test provides the greatest protection for inmates' rights." *Id.*, at 850. The defendants must therefore show a compelling state interest to justify the alleged restrictions on Islamic activities at Pontiac. *Kennedy v. Meacham*, 540 F.2d 1057, 1061 (10th Cir. 1976); *United States ex rel. Jones v. Rundle*, 453 F.2d 147, 150 (3d Cir. 1971). In addition to a compelling state interest, the state must show that the alleged restrictions were the least restrictive means necessary to realize that interest. *Cooper v. Pate, supra,* at 522.

■ We therefore hold that plaintiff's allegations of restrictions imposed upon the exercise of his religion, state a claim upon which relief can be granted.

### B.

Plaintiff's second and fourth claims for relief (First Amended Complaint ¶¶ 24(a), (f), 29, 30) are that defendants have deprived plaintiff and his class of the free exercise of religion and the equal protection of the law by allocating a disproportionately small share of the Pontiac religious budget to Muslim activities, and by hiring Christian ministers but refusing to allocate funds for the compensation of those Muslim ministers who come to Pontiac to serve the religious needs of the inmates.

■ "The question of under what circumstances prison officials must *provide* facilities and clergy is essentially one of equal protection." 125 U.Pa.L.Rev. at 829 (emphasis in original). It is well settled

that the state must make religious facilities available in a non-discriminatory manner. *Fulwood v. Clemmer*, 206 F.Supp. 370, 374 (D.D.C.1962). The Supreme Court held in *Cruz v. Beto, supra*, 405 U.S. at 322, 92 S.Ct. at 1081, that a prisoner must be afforded "a reasonable opportunity of pursuing his faith comparable to the opportunities afforded fellow prisoners who adhere to conventional religious precepts . . . " See also *Cooper v. Pate, supra* at 522.

■ Defendants argue that equal protection does not require exact equality. *Norvell v. State of Illinois*, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963) *reh. denied*, 375 U.S. 870, 84 S.Ct. 27, 11 L.Ed.2d 99. On a motion to dismiss, however, the Court cannot appraise the extent of the inequality which is alleged. It is clear, however, that Muslim clergy should be compensated in a like manner as other clergy, *Northern v. Nelson*, 315 F.Supp. 687, 688 (N.D.Cal.1970) *aff'd*, 448 F.2d 1266 (9th Cir. 1971), and funds should be allocated to the Muslims for activities proportionate to funds allocated for other religious groups. *Pitts v. Knowles*, 339 F.Supp. 1183 (W.D. Wis.1972) *aff'd* 478 F.2d 1405 (7th Cir. 1973); *Fulwood v. Clemmer, supra.*

■ Accordingly, plaintiff's allegations of disproportionate funding for Muslim clergy and activities state a claim upon which relief can be granted.

### C.

■ For the same reasons, plaintiff's fourth claim, alleging discrimination between Christian and Muslim inmates by providing reasonable access to religious materials to the former and not the latter, states a claim upon which relief can be granted. First Amended Complaint ¶¶ 24(d), 30.

---

1. In the leading case on this issue in the Seventh Circuit, *Cooper v. Pate, supra,* the court explicitly did not adopt the "clear and present danger" test for cases involving the religious rights of prisoners. 382 F.2d at 522. The question is apparently left open in this Circuit. We note, however, a number of cases, in addition to the decisions cited below, which apply the standard of compelling state interest. 125 U.Pa.L.Rev. 812, 850–51, n. 252.

## D.

Plaintiff's third claim is that defendants Grant and Reynolds have subjected inmates desiring to attend Muslim services to more stringent procedures for obtaining service cards than those to which inmates desiring to attend Christian services are subject. Defendants, relying on *Dieu v. Norton*, 411 F.2d 761 (7th Cir. 1969) and *Bach v. Scott*, 357 F.Supp. 1125 (N.D.Ill.1973) urge that plaintiff's complaint on this point is vague and conclusory. We disagree.

It is axiomatic that the Federal Rules of Civil Procedure provide for "notice" pleading as opposed to "fact" pleading. Cf., 2A J. Moore, *Federal Practice*, ¶ 8.12 (2d ed., 1975). The complaint in *Dieu v. Norton, supra,* was dismissed because it alleged a conspiracy *per se.* In *Bach v. Scott, supra,* the complaint was dismissed because it merely alleged that the defendant photocopied "illegally obtained documents" without explaining more. Here, plaintiff's claim for relief, First Amended Complaint ¶ 29, is accompanied by the following factual allegation:

> Inmates at Pontiac are required to apply to Defendants Grant and Reynolds for service cards to enable them to attend religious services; while such service cards are normally issued to Christians as a matter of course upon application, inmates desiring service cards to attend Islamic services are subjected to interviews where attempts have been made to dissuade them from attending such services. On some occasions, inmates desiring Islamic service cards have not been called in for interviews at all and thus have been wholly unable to acquire the necessary permission to attend Islamic services. First Amended Complaint ¶ 24(c).

Such an allegation puts defendants on notice of "what plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson, supra.*

Accordingly, we hold that plaintiff's third claim states a claim upon which relief can be granted. For the same reasons, we hold that plaintiff's second and fourth claims, (see part I(B), *supra,* are not vague and conclusory.

## III.

Having concluded that plaintiff stated a claim against defendants Pinckney, Grant and Reynolds, we are faced with the question of whether defendant Rowe, Director of the Illinois Department of Corrections, is a proper party.

Defendant Rowe advances two arguments in support of his motion to dismiss. He first argues that the issues in this case were disposed of as to this plaintiff in *Cochran v. Sielaff*, 405 F.Supp. 1126 (S.D.Ill. 1976). In that case, Lawrence Cochran, plaintiff in the case at bar, brought suit against defendant's predecessor as Director of the Department of Corrections. He then alleged restrictions on his free exercise of religion and denial of due process for failure of the prison authorities to allocate part of Pontiac's religious budget to the Muslims. That claim was rendered moot by institutional grievance procedures. He also alleged that his free exercise of religion was infringed by the defendants' prohibition of food in his cell during the Fast of Ramadan and imposing of restrictions upon attendance at Muslim services.

The case came before Judge Morgan on the plaintiff's motion for leave to file *in forma pauperis.* See 28 U.S.C. § 1915(d). The Judge denied Cochran's motion.

It is clear that the disposition in *Cochran v. Sielaff, supra,* does not have the force of *res judicata* in the case at bar. "A dismissal under § 1915(d) does not necessarily constitute a finding that under the allegations of the complaint it appears beyond doubt that plaintiff could prove no set of circumstances which would constitute a claim upon which relief can be granted as required under Fed.R.Civ.P. 12(b)(6) . . ." *Daves v. Scranton*, 66 F.R.D. 5, 7 (E.D.Pa. 1975). See *Boag v. Boies*, 455 F.2d 467, 468 (9th Cir. 1972).

Since we have already concluded that plaintiff's First Amended Complaint is not lacking in merit, we need not reach the question of whether *Cochran v. Sielaff* dis-

poses of this case as a matter of *stare decisis*. Our reading of *Cochran v. Sielaff*, however, indicates that the majority of the issues raised in this action were not raised in the past action. Further, the one claim in the past action that bears any resemblance to this case was rendered moot at that time. We have in a motion to dismiss no indication that the claim of unlawful disparity in Pontiac's religious budget is now without merit.

 Defendant Rowe's second argument is that plaintiff makes no factual allegations concerning his participation in the alleged unconstitutional conduct. Defendant accurately asserts that the doctrine of *respondeat superior* is inapplicable to actions brought under 42 U.S.C. § 1983. Plaintiff must therefore allege that Rowe was personally involved in or had personal knowledge of the alleged violation of civil rights. *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir. 1971).

Plaintiff does not dispute this contention. He points out that the First Amended Complaint alleges that at all relevant times Charles Rowe was Director of the Illinois Department of Corrections and as such, he is charged with overall responsibility for the administration and direction of the Department. Ill.Rev.Stat. ch. 127, § 4; Ill. Rev.Stat. ch. 38, §§ 1003–2–2, 1003–2–3. The Complaint also alleges that defendant Rowe knew or was reckless in failing to know of the violations alleged in ¶¶ 37 and 38.

It is clear that where the defendant is under an affirmative duty to act and fails to act, he may be held liable for the consequences under 42 U.S.C. § 1983. *Byrd v. Brishke*, 466 F.2d 6, 10 (7th Cir. 1972); *Whirl v. Kern*, 407 F.2d 781, 785–88 (5th Cir. 1968) *cert. denied*, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969).

Since we have already held that plaintiff's factual allegations are not fatally vague nor conclusory, the claims that defendant "Rowe knew or was reckless in failing to discover" the alleged facts state a claim upon which relief can be granted.

Accordingly, defendants motions to dismiss are denied.